BRENDA HAGLUND, executrix,[1] *vs.* PHILIP MORRIS INCORPORATED.

Worcester. February 7, 2006. - May 18, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Tobacco. Warranty. Uniform Commercial Code,* Warranty. *Estoppel. Words,* "Unreasonable use."

Overview of the law of warranty liability. [745-749]

This court concluded that a cigarette manufacturer in a wrongful death action predicated on the breach of warranty of merchantability may not, in the normal course, assert as an affirmative defense that the decedent smoker's use of cigarettes was "unreasonable," but is not foreclosed from doing so as a matter of law, given that, in certain situations, a consumer's behavior may be overwhelmingly unreasonable in light of the consumer's knowledge about a specific medical condition from which she suffers and the risks smoking posed to that specific condition at the time she began smoking [749-754]; therefore, this court reversed a Superior Court judge's summary dismissal of such an action based on the unreasonable use defense where the record on the issue whether the consumer's use of cigarettes was overwhelmingly unreasonable was not fully developed [754], and there was no merit to the plaintiff's argument that the manufacturer should be prevented from asserting the unreasonable use defense on the theory of quasi estoppel [754-755].

CIVIL ACTION commenced in the Superior Court Department on March 21, 2001.

A motion to strike was heard by *Leila R. Kern,* J., and entry of a judgment of dismissal was ordered by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Stephen R. Fine (Charles M. Healey, III,* with him) for the plaintiff.

*Paul E. Nemser (Roberto M. Braceras* with him) for the defendant.

The following submitted briefs for amici curiae:

---

[1] Of the estate of Stephen C. Haglund.

*David R. Geiger, Ashley A. Weaver, & Jonathan M. Harrison* for Product Liability Advisory Council, Inc.

*Edward L. Sweda, Jr.*, for Tobacco Control Resource Center, Inc.

MARSHALL, C.J. We determine in this case whether a cigarette manufacturer in a wrongful death action predicated on breach of the warranty of merchantability may assert as an affirmative defense that the decedent smoker's use of cigarettes was "unreasonable." See *Correia* v. *Firestone Tire and Rubber Co.*, 388 Mass. 342, 356 (1983) (in warranty liability action, "the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous") (*Correia* defense).[2]

Following the death from lung cancer of her husband, Stephen C. Haglund (decedent), a long-time smoker, Brenda Haglund filed a wrongful death product liability action against Philip Morris Incorporated (Philip Morris) pursuant to G. L. c. 106, § 2-314 (2) (*c*).[3] In denying all liability, Philip Morris asserted, among other things, that the decedent's decision to begin and continue smoking its cigarettes constituted "unreasonable use" pursuant to our holding in *Correia, supra*. The plaintiff moved for summary judgment to preclude assertion of the *Correia* defense, arguing that the *Correia* defense should, as a matter of law, be unavailable because a cigarette is an inherently danger- ous product that causes injury when used for its ordinary purpose. The judge treated the summary judgment motion as a motion to strike, denied it, and dismissed the action sua sponte. The plaintiff appealed, and we granted her application for direct appellate review.[4]

We affirm the judge's denial of the motion to strike and reverse the judgment of dismissal. As we explain more fully below, the *Correia* defense presumes that the product at issue

---

[2]The *Correia* defense (*Correia* v. *Firestone Tire and Rubber Co.*, 388 Mass. 342, 356 [1983]) is also known as the "unreasonable use" defense. See *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 60 n.12 (1988).

[3]General Laws c. 106, § 2-314 (2) (*c*), provides: "Goods to be merchant- able must at least be such as . . . are fit for the ordinary purposes for which such goods are used."

[4]We acknowledge the amicus briefs filed by the Tobacco Control Resource Center, Inc., and the Product Liability Advisory Council, Inc.

is, in normal circumstances, reasonably safe and capable of being reasonably safely used, and therefore that the consumer's unreasonable use of the product he knows to be defective and dangerous is appropriately penalized. Here, however, both Philip Morris and the plaintiff agree that cigarette smoking is inherently dangerous and that there is no such thing as a safe cigarette. Because no cigarette can be safely used for its ordinary purpose, smoking, there can be no nonunreasonable use of cigarettes. Thus the *Correia* defense, which serves to deter unreasonable use of products in a dangerous and defective state, will, in the usual course, be inapplicable.

However, we also agree with Philip Morris that, in certain conceivable scenarios, an individual consumer's behavior may be so overwhelmingly unreasonable in light of the consumer's knowledge about, for example, a specific medical condition from which he suffers, that the *Correia* defense may be invoked. The jury determine unreasonable use from the specific factual context of each case, and we are loathe to foreclose assertion of the defense as a matter of law in every cigarette-related product liability action. Because the plaintiff's motion for summary judgment on the *Correia* defense was brought early in the litigation, we reverse the judgment of dismissal to afford the parties the opportunity to develop more fully the evidence supporting their claims and defenses.

We summarize the relevant background.

1. *Background.* The decedent was born on July 22, 1948, and began smoking in 1973. The plaintiff alleged that, initially, the decedent smoked only Philip Morris's Marlboro brand cigarettes, through which he became addicted to nicotine. She also alleged that the decedent tried several times to quit smoking cigarettes. The decedent died as a result of lung cancer on May 10, 2000.

The plaintiff filed the present wrongful death action in Middlesex County in March, 2001; it was transferred to Worcester County in November, 2001, pursuant to a joint motion to sever and suspend case processing.[5] The complaint alleged two counts: breach of the implied warranty of merchant-

[5]According to the plaintiff, an action comprising "numerous additional plaintiffs and defendants," including the parties in this action, was originally filed in the Superior Court in Middlesex County in March, 2001. In the

ability and punitive damages. In relevant part, the plaintiff claimed the decedent used cigarettes "exactly as intended and foreseen" by the defendant, that his death was the "direct result" of his addiction to smoking Marlboro cigarettes, that Marlboro cigarettes were defectively designed because, in 1973, when the decedent began smoking, Philip Morris could have implemented, "a safer reasonable alternative design: a non-addictive cigarette through nicotine extraction," but did not do so, and that "[a] cigarette without nicotine would be non-addictive and would [have] enable[d] the smoker to quit smoking at will, or reduce use below disease threshold levels."

In its answer, Philip Morris denied all liability. It stated that "nicotine in cigarette smoke is addictive and that cigarette smoking is addictive," that "nicotine plays an important role in cigarette smoking," that "it can be very difficult to quit smoking," that "the technology exists to reduce, but not completely remove, the nicotine content in tobacco," and that such technology existed prior to 1973, when the decedent began smoking. Philip Morris also averred that the risks of cigarette smoking are widely known, that individual decisions whether and how much to smoke vary from individual to individual, that no consensus exists in the scientific community about what constitutes a safer alternative cigarette design, and that the company's attempt to market a reduced nicotine cigarette proved unsuccessful. Philip Morris interposed forty affirmative defenses, including, as its thirty-fourth defense, the *Correia* defense that is at the heart of this appeal.[6]

On September 1, 2004, the plaintiff sought summary judgment to preclude Philip Morris from asserting the *Correia*

---

severed action filed in the Superior Court in Worcester County, the plaintiff originally named R.J. Reynolds Tobacco Company (RJR) as a codefendant. Subsequently, RJR was dismissed as a defendant with prejudice.

[6]Philip Morris's thirty-fourth defense states: "Any injuries and damages allegedly sustained by Plaintiff and . . . decedent were caused, in whole or in part, by . . . decedent's 'unreasonable use' of the cigarettes in question. Philip Morris therefore expressly pleads . . . decedent's 'unreasonable use' of the cigarettes in question as a complete bar to any recovery against Philip Morris in this action. *Correia* v. *Firestone Tire and Rubber Co.*, 388 Mass. 342 (1983)."

defense.[7] The grounds for preclusion were, first, that the *Correia* defense is inapplicable where the product, cigarettes, "are the only consumer product in existence which when used exactly as intended, and in the complete absence of any mishaps, causes injury," and, second, the doctrine of quasi estoppel. See, e.g., *Uccello* v. *Gold'n Foods, Inc.,* 325 Mass. 319, 328 (1950). The plaintiff "concede[d] and . . . stipulate[d]" in her summary judgment motion that, "if [Philip Morris] is permitted to assert the *Correia* defense in this case, the Defendant will prevail on the basis of this defense." After Philip Morris filed its opposition, and in an apparent attempt to remove all factual controversy from the case, the plaintiff filed the following stipulation: "Plaintiff hereby stipulates that at all relevant times hereto [the] decedent was fully aware of the risks of cigarette addiction and lung cancer from smoking cigarettes and acted unreasonably in starting to smoke cigarettes and continuing to smoke cigarettes."[8]

In October, 2004, a Superior Court judge, treating the plaintiff's summary judgment motion as a motion to strike, denied it. She entered, sua sponte, a judgment of dismissal on the basis of Philip Morris's assertion of the *Correia* defense and the plaintiff's stipulation.

2. *Discussion.* We have not previously been asked to address the question posed by the plaintiff: whether the *Correia* defense is unavailable as a matter of law to cigarette product liability claims based on a theory of breach of the implied warranty of merchantability. Because the *Correia* defense is part of a comprehensive scheme of warranty liability, we begin with an overview of the relevant law.

a. *Implied warranty of merchantability.* The plaintiff's claim for breach of the implied warranty of merchantability is

---

[7]As Philip Morris noted in its opposition, the plaintiff's motion contained no statement of supporting facts, as required by Rule 9A (b)(5) of the Rules of the Superior Court. It further claimed that the motion was premature and noted, "The Tracking Order in this case contemplates at least another twelve months of discovery." Philip Morris has not supplied the relevant Tracking Order.

[8]In her reply memorandum below, the plaintiff also stated that "there is no set of facts under which Philip Morris could *not* successfully assert the *Correia* Defense."

governed principally by G. L. c. 106, § 2-314 (2) (*c*). See
note 3, *supra*. We have previously noted that, as a matter of
social policy, the warranty of merchantability imposes a "special
responsibility" on the seller toward "*any* member of the
consuming public who may be injured" by its product (emphasis
added). *Correia* v. *Firestone Tire and Rubber Co.*, 388 Mass.
342, 354-355 (1983), quoting Restatement (Second) of Torts
§ 402A comment c (1965). Warranty liability is "fully as
comprehensive as the strict liability theory of recovery that has
been adopted by a great many other jurisdictions," *Back* v.
*Wickes Corp.*, 375 Mass. 633, 639 (1978), and "congruent in
nearly all respects with the principles expressed in Restatement
(Second) of Torts § 402A (1965)." *Id.* at 640. See *Cigna Ins.
Co.* v. *Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001) ("Ac-
tions under Massachusetts law for breach of the implied war-
ranty of merchantability are the functional equivalent of strict
liability in other jurisdictions"). The stringent responsibility
placed on sellers under our warranty scheme is justified on the
ground that:

> "[T]he public has the right to and does expect, in the
> case of products which it needs and for which it is forced
> to rely upon the seller, that reputable sellers will stand
> behind their goods; that public policy demands that the
> burden of accidental injuries caused by products intended
> for consumption be placed upon those who market them,
> and be treated as a cost of production against which li-
> ability insurance can be obtained; and that the consumer
> of such products is entitled to the maximum of protection
> at the hands of someone, and the proper persons who af-
> ford it are those who market them. . . ."

*Correia* v. *Firestone Tire and Rubber Co.*, *supra*, quoting
Restatement (Second) of Torts, *supra* at § 402A comment c.

A seller breaches its warranty obligation when a product that
is "defective and unreasonably dangerous," *Colter* v. *Barber-
Greene Co.*, 403 Mass. 50, 62 (1988), for the "[o]rdinary
purposes" for which it is "fit" causes injury. "Ordinary
purposes" refers to a product's intended and foreseeable uses.
*Back* v. *Wickes Corp.*, *supra* at 640. "Fitness" is a question of
degree that primarily, although not exclusively, concerns reason-

able consumer expectations. *Id.* at 642. Both "ordinary purposes" and "fitness" are concepts that demand close attention to the actual environment in which the product is used. The plaintiff in a design liability warranty case must prove that, at the time he was injured, he was "using the product in a manner that the defendant seller, manufacturer, or distributor reasonably could have foreseen." *Allen* v. *Chance Mfg. Co.*, 398 Mass. 32, 34 (1986).

Warranty liability may be premised either on the failure to warn, e.g., *Bavuso* v. *Caterpillar Indus., Inc.*, 408 Mass. 694 (1990), or, as here, on defective design. In determining warranty liability in the latter case, the relevant inquiry focuses on the product's features, not the seller's conduct. *Colter* v. *Barber-Greene Co.*, *supra* at 61-62.[9] Although the manufacturer is not expected to design against "bizarre, unforeseeable accidents," the manufacturer will be liable if its "conscious design choices"

---

[9]It is possible, of course, to bring a defective design claim predicated on a theory of negligence. See, e.g., *Uloth* v. *City Tank Corp.*, 376 Mass. 874 (1978). We have previously noted that it is "a well-settled proposition that actions for negligence and for breach of warranty impose distinct duties and standards of care." *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 61 (1988). In a negligence action, the conduct of the defendant takes center stage, and liability will be imposed where the defendant "has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of injury." *Id.* The *Correia* defense does not apply in a negligence action, but the plaintiff's unforeseeable misuse may operate to eliminate or apportion recovery pursuant to our comparative negligence statute, G. L. c. 231, § 85. See generally *Colter* v. *Barber-Greene Co.*, *supra* at 61-62 (distinguishing negligence from warranty theories of liability); *Cigna Ins. Co.* v. *Oy Saunatec, Ltd.*, 241 F.3d 1, 14-19 (1st Cir. 2001) (discussing differences between unforeseeable misuse in a negligence action and unreasonable use in a warranty action). "A defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true. A defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Colter* v. *Barber-Greene Co.*, *supra* at 61, quoting *Hayes* v. *Ariens Co.*, 391 Mass. 410 (1984).

The plaintiff acknowledged that she could have brought her design claim in negligence and avoided altogether the possibility of having to address a *Correia* defense. However, she asserts that proof of defective design in a tobacco negligence action is not plausible because for all practical purposes Philip Morris has vigorously defended disclosure of cigarette ingredients on trade secret grounds. We express no opinion on this aspect of the plaintiff's argument.

fail to anticipate the reasonably foreseeable risks of "ordinary" use. *Back* v. *Wickes Corp., supra* at 640, 642. Thus, warranty liability may be imposed even where the product was properly designed, manufactured, or sold; conformed to industry standards; and passed regulatory muster, and even where the consumer used the product negligently. See *Correia* v. *Firestone Tire and Rubber Co., supra* at 353, quoting Restatement (Second) of Torts, *supra* at § 402A comment a (warranty liability may be imposed on manufacturer "even though he has exercised all possible care in the preparation and sale of the product"); *id.* at 356 ("the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous"); *Back* v. *Wickes Corp., supra* at 636 (manufacturer of motor home found liable in design defect case "relied heavily on evidence that the vehicle conformed to all product safety standards prevailing in the industry" when the vehicle was manufactured). The plaintiff need only convince the jury that a safer alternative design was feasible, not that any manufacturer in the industry employed it or even contemplated it. See *Marchant* v. *Dayton Tire & Rubber Co.*, 836 F.2d 695, 699 & n.2 (1st Cir. 1988) ("[t]he alternative [design] need not be in fact available . . . . The . . . test is one of feasibility." The "plaintiff's case is not automatically defeated merely because the alternative design was not being used at the material time"). To determine the adequacy of a product's design, the jury must weigh multiple factors, including "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Back* v. *Wickes Corp., supra* at 642, quoting *Barker* v. *Lull Eng'g Co.*, 20 Cal. 3d 413, 431 (1978). We have recognized that the balance struck by the jury is ultimately a judgment about the "social acceptability" of the design. *Back* v. *Wickes Corp., supra* at 642.

b. *The* Correia *defense.* As our summary above indicates, warranty liability poses weighty burdens on manufacturers to safeguard consumers. Warranty liability, however, is not

"absolute." *Id.* at 640. Tempering the manufacturer's burden is the duty of the consumer "to act reasonably with respect to a product which he knows to be defective and dangerous." *Correia* v. *Firestone Tire and Rubber Co.*, *supra* at 355. A user who "unreasonably proceeds to use a product which he knows to be defective and dangerous" violates his "only duty" under our warranty law and thereby forfeits the law's protection. *Id.* When the consumer's knowing use of a product in a dangerous and defective condition is unreasonable, the consumer's own conduct has become the proximate cause of his injuries, and he can recover nothing from the seller. *Id.* at 356.

The *Correia* defense is applicable only after a plaintiff has proved the case-in-chief. *Allen* v. *Chance Mfg. Co.*, *supra* at 34. A defendant must then demonstrate that the plaintiff "subjectively knew that the product was defective and dangerous, and that, despite that subjective belief, the plaintiff's use of the product was objectively unreasonable, and that the plaintiff's conduct was a cause of the injury." *Cigna Ins. Co.* v. *Oy Saunatec, Ltd.*, 241 F.3d 1, 17 (1st Cir. 2001). The plaintiff's subjective knowledge of a product's defect need not be technically specific; "it is enough to show that the plaintiff knew the product was defective in some way, rather than showing that it knew the technical elements of the defect." *Id.* at 19. The *Correia* defense may apply even where the plaintiff's unreasonable use of the product was foreseeable. *Id.* at 18.

Against the standards we have just summarized, we now examine whether, as the plaintiff argues, the *Correia* defense should be foreclosed as a matter of law to defendants in tobacco product liability warranty claims.

c. *Cigarettes and warranty liablity.* The plaintiff's rationale for opposing the *Correia* defense as an affirmative defense is that "[c]igarettes are the only consumer product in existence which when used exactly as intended, and in the complete absence of any mishaps, cause injury." We need not consider the plaintiff's broad generalizations to conclude that, in most tobacco liability warranty actions, the *Correia* defense will be inapplicable, for the reasons we now describe.

The manufacture, marketing, and sale of cigarettes are, indisputably, legitimate, for-profit business enterprises. The

United States Congress has declared the marketing of tobacco to be "one of the greatest basic industries of the United States." *Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137 (2000), quoting 7 U.S.C. § 1311(a). We may take judicial notice that, as a for-profit enterprise and a publicly traded company, Philip Morris seeks to manufacture, market, and sell cigarettes to the general adult public in a manner intended to attract and retain as many consumers as possible. Philip Morris does not dispute that its efforts to market and sell its cigarettes to the broad general adult public is anything other than robust.

At the same time, and as Philip Morris readily admits, cigarettes are a product that cannot be used safely for the "ordinary purposes" for which they are fit, namely, smoking. The record discloses two inherent dangers of smoking cigarettes that Philip Morris does not deny. First, cigarette smoking poses serious health risks. We have previously taken judicial notice of a report by the Surgeon General of the United States released in May, 2004, that "presents persuasive evidence that smoking [cigarettes] harms nearly every organ of the human body, causes many diseases and reduces the health of smokers in general." *Aspinall* v. *Philip Morris Co.*, 442 Mass. 381, 388 n.16 (2004). See *Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, *supra* at 125 ("one of the most troubling public health problems facing our Nation today: the thousands of premature deaths that occur each year because of tobacco use"). Philip Morris concedes that "smoking causes serious disease, and there is no such thing as a safe cigarette."

The second danger of cigarette smoking is that the nicotine in cigarettes is addictive. An addiction is an "[h]abitual psychological and physiological dependence on a substance or practice which is beyond voluntary control." Stedman's Medical Dictionary 23 (25th ed. 1990). See *Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, *supra* at 138, citing United States Department of Health and Human Services, Public Health Service, The Health Consequences of Smoking: Nicotine Addiction 6-9, 145-239 (1988) ("concluding that tobacco products are addicting in much the same way as heroin and cocaine, and that nicotine is the drug that causes addiction"). A reasonable infer-

ence from Philip Morris's acknowledgment that the nicotine in cigarettes makes smoking addictive is that its product was consciously designed to induce cigarette dependency in the ordinary smoker, regardless whether any individual smoker becomes addicted to cigarettes.

Because the product cannot be used safely in its ordinary-use environment, cigarette merchandising is incompatible with the *Correia* defense in most circumstances. The purpose of our warranty laws, as we have shown, is to encourage safe products in the stream of commerce. The duty of the consumer is "to act reasonably with respect to a product which he knows to be defective and dangerous." *Correia* v. *Firestone Tire and Rubber Co.*, 388 Mass. 342, 355 (1983). But in the case of cigarette use, the consumer cannot fulfil that duty, because no nonunreasonable use of cigarettes, as they are currently designed, is possible. The social policy that animates the *Correia* defense — to encourage reasonable use of products by consumers — cannot be accomplished. The legislative intent of our warranty laws would be sidestepped were the manufacturer of cigarettes permitted routinely to escape all liability merely by proving that the plaintiff was an ordinary consumer who used its products in a manner readily foreseeable.

Philip Morris argues that consumers often elect to use products that may cause harm as a "byproduct" of normal use and for which the *Correia* defense presumptively is available. One can become addicted to the sugar in candy, it points out, or contract skin cancer by using suntan oil. Guns are dangerous; aspirin taken for a headache can reduce the tendency of blood to clot. These are false analogies. The fallacy in Philip Morris's argument is that in none of these examples, or others it offers, is any reasonable use of the product whatsoever foreclosed by the nature of the product itself. Sugar, suntan oil, guns, and aspirin are not inherently addictive to the general public or incapable of being used reasonably. The *Correia* defense is available for warranty claims for these products because the defense serves an actual purpose: to deter a consumer from knowingly using a product in a defective and dangerous (as opposed to its ordinary) condition. The consumer has a choice of using a product reasonably or unreasonably, and the defense

penalizes the consumer for unreasonable use. It does not presume that the only safe use of a product is nonuse, a position urged on us by Philip Morris but which runs contrary to our entire scheme of commerce.

We have examined the numerous warranty cases cited to us by the parties in which the *Correia* defense was invoked and there is none where the defendant conceded that reasonable use of the product was impossible. See, e.g., *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 61-62 (1988) (unreasonable use of twin screw sand classifier by servicing machine in dangerous manner); *Allen* v. *Chance Mfg Co.*, 398 Mass. 32 (1986) (unreasonable repair of amusement ride by failing to wear goggles); *Correia* v. *Firestone Tire and Rubber Co.*, *supra* (unreasonable use of truck tire); *Walsh* v. *Telesector Resources Group, Inc.*, 40 Mass. App. Ct. 227 (1996) (unreasonable use of ladder by failure to tie it at its base); *Velleca* v. *Uniroyal Tire Co.*, 36 Mass. App. Ct. 247 (1994) (unreasonable use of tire and rim by inflating sixteen-inch tire on sixteen and one-half inch rim); *Chandler* v. *FMC Corp.*, 35 Mass. App. Ct. 332 (1993) (unreasonable use of defective and dangerous side climbing system on fire engine); *Goulet* v. *Whitin Mach. Works, Inc.*, 30 Mass. App. Ct. 310 (1991) (unreasonable use of air hose to clean carding machine); *Cigna Ins. Co.* v. *Oy Saunatec, Ltd.*, 241 F.3d 1 (1st Cir. 2001) (unreasonable use of sauna by leaving towels on heater); *Chute* v. *Sears Roebuck & Co.*, 143 F.3d 629 (1st Cir. 1998) (unreasonable use of radial arm saw by walking behind saw); *Venturelli* v. *Cincinnati, Inc.*, 850 F.2d 825 (1st Cir. 1988) (alleged unreasonable use of plate-shearing machine by placing hand in dangerous part of machine); *Marchant* v. *Dayton Tire & Rubber Co.*, 836 F.2d 695 (1st Cir. 1988) (unreasonable use of tire by over inflation); *McIsaac* v. *Didriksen Fishing Corp.*, 809 F.2d 129 (1st Cir. 1987) (unreasonable use of helmsman's chair in commercial fishing vessel); *Wasylow* v. *Glock, Inc.*, 975 F. Supp. 370 (D. Mass. 1996) (unreasonable use of gun by cleaning or storing loaded gun with barrel pointed toward stomach); Perez *vs.* Improved Plastics Mach., Civ. A. No. 92-40066-GN (D. Mass. 1993) (unreasonable use of blow molding machine by removing guard).

Nor do we conclude, in the circumstances of this case, that

the plaintiff's stipulation of knowing unreasonable use to be fatal. See note 8, *supra*. On the record before us, the plaintiff's stipulation restates the obvious: that cigarettes cannot be used safely and therefore that cigarette use is unreasonable. The stipulation that the decedent was aware of the well-publicized health risks of cigarettes merely places him in the same position as the ordinary consumer or potential consumer of cigarettes. Without more, it is insufficient to justify dismissal of the defective design warranty claim.

Our conclusion does not, as Philip Morris claims, eviscerate the *Correia* defense. We agree with the defendant that the "*key* to the *Correia* defense is not the care, knowledge, or intent of the manufacturer, but the duty of the user to act reasonably concerning a product known to be defective and dangerous." But where the defendant merchant affirmatively invites the consumer to use a product that cannot safely be used for its ordinary purposes, then public policy demands that the merchant bear the burden of reasonably foreseeable injuries that result from that invitation. See *Colter* v. *Barber-Greene Co.*, *supra* at 62 n.13, quoting Restatement (Second) of Torts § 402A comment c (1965) ("public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained"). If Philip Morris chooses to market an inherently dangerous product, it is at the very least perverse to allow the company to escape liability by showing only that its product was used for its ordinary purpose.

We agree with Philip Morris, however, that a defendant in a cigarette product liability warranty claim should not be entirely foreclosed from asserting the *Correia* defense as a matter of law. We are persuaded by Philip Morris's argument that, in certain situations, a consumer's use of cigarettes may be so overwhelmingly unreasonable as to make the imposition of warranty liability on the merchant fundamentally unfair. When a consumer, for example, begins smoking cigarettes knowing that she has a particular medical condition, such as emphysema, that is exacerbated by smoking, the *Correia* defense may be appropriately invoked. To succeed in interposing the *Correia*

defense in such circumstances, the defendant must demonstrate that the plaintiff knew of her particular medical condition and the risks smoking posed to that specific condition at the time she began smoking. The defendant need not show that the consumer had a medical expert's knowledge of the risk; it is enough for the defendant to demonstrate that the plaintiff knew that smoking would exacerbate her specific illness. Cf. *Cigna Ins. Co.* v. *Oy Saunatec, Ltd.*, *supra* at 19 (defendant need not demonstrate that plaintiff had technical knowledge of dangerous and defective condition).

The record before us contains no evidence that the decedent's use of cigarettes was overwhelmingly unreasonable in the manner we have described above. However, the plaintiff brought her summary judgment motion early in the litigation, when neither side had full opportunity for discovery. At that stage, the judge properly denied the motion to strike the *Correia* defense, but she terminated the case prematurely. We do not foreclose the plaintiff from renewing, at a later time and on a more fully developed record, her motion to preclude the *Correia* defense.

3. *Quasi estoppel.* There is no merit to the plaintiff's argument that Philip Morris should be prevented from asserting the *Correia* defense on the theory of quasi estoppel. Quasi estoppel precludes a party from subsequently repudiating an action to which he had previously manifested his assent and from which assent he thereby benefited. See *Uccello* v. *Gold'n Foods, Inc.*, 325 Mass. 319, 325 (1950); *Comins* v. *Sharkansky*, 38 Mass. App. Ct. 37, 42-43 (1995). See generally 31 C.J.S. Estoppel and Waiver § 123 (1996) ("Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent with it"). It is an equitable concept based on principles of conscionability. See *id.* The plaintiff claims that Philip Morris's conduct in manufacturing, marketing, and selling cigarettes is "unconscionable to the highest order of magnitude."[10] However, cigarettes are a legal product whose elimination from the marketplace Congress has foreclosed, and therefore the manufacture, marketing, and sale

[10]The plaintiff acknowledged that the doctrine of quasi estoppel has not previously been used to strike an affirmative defense.

of cigarettes must be presumed not "unconscionable." See *Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137 (2000) (despite known risks of cigarette smoking, "Congress . . . has foreclosed the removal of tobacco products from the market"). Nor do we find Philip Morris's manufacturing, marketing, and sale of cigarettes to comprise "assent" or "acquiescence" in the manner contemplated by the doctrine of quasi estoppel. See, e.g., *Uccello* v. *Gold'n Foods, Inc.*, *supra* (plaintiff may not seek damages for alleged corporate mismanagement where he acquiesced in the payment of bills he challenges); *Comins* v. *Sharkansky*, *supra* (plaintiff's alleged acquiescence in valuation of property not clear on record).

4. *Conclusion.* For the reasons stated above, we affirm the judge's denial of the motion to strike but reverse the judgment of dismissal. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*