Henry, Bruce R., J.
This matter came on to be heard on the motion of the plaintiff seeking certification of this matter as a class action pursuant to Mass.R.Civ.P. 23. The plaintiff seeks to represent a class of all Massachusetts residents who are owners of Daimler-Chrysler vehicles equipped with the Gen-III seat belt buckle. This Court (Quinlan, J.) previously granted summary judgment in favor of DaimlerChrysler on the plaintiffs claims of negligence, negligent misrepresentation, and c.93A violations, leaving extant only the plaintiffs claims of breaches of express and implied warranties. For the reasons which follow, the plaintiffs motion for class certification is DENIED.
Procedural/Factual Background
This matter was originally filed in state court and then removed by the defendant to federal court. In March of 2004, the matter was remanded to this Court. The complaint alleges that every Gen-III seat belt buckle utilized by DaimlerChrysler in its vehicles is defective due to the potential for accidental release. The plaintiff, Barry Savage (Savage), seeks to represent a class of all persons or entities residing in Massachusetts who own or lease vehicles manufactured by the defendant for model years 1993 through 2001 which are equipped with Gen-III seat belt buckles, excluding any entities affiliated with the defendant and any person who has an action for damages for personal injury or death or property damage against the defendant.
The defendant’s motion for summary judgment was allowed as to Savage’s claims of negligence, negligent misrepresentation, and violations of G.L.c. 93A and was denied as to the alleged breaches of express and implied warranties.
Savage says that he bought the vehicle in question, a 1999 Dodge Caravan, in February of 1999 based on a number of factors, including the vehicle’s safety. There was no discussion between Savage and sales personnel regarding the Gen-III seat belts and he does *203 not recall reading anything about those seat belts before he purchased the vehicle. It was Savage’s understanding that at the time of purchase of the vehicle, the only warranties that covered it were those contained in the written limited warranty provided. Savage’s vehicle has a written notice on the driver’s side door panel which states: “This vehicle conforms to all applicable motor vehicle safety standards in effect on the date of manufacture shown above.” Savage has never had any problem with the seat belts in his vehicle; there has never been an incident of accidental release of the seat belts. According to Savage, his concern regarding the allegedly defective design of the Gen-III seat belt buckle arose only after he was given an article by his attorney about the safety of the Gen-III seat belt buckle. Despite his purported concern about the seat belt buckles, Savage continued to use the vehicle as he had before and did not alter or replace the seat belts in the vehicle.
Applicable Law Mass.R.Civ.P. 23(a)
Mass.RCiv.P. 23 sets forth the requirements that a plaintiff must satisfy in order for the Court to certify a class. The plaintiff must show that:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Mass.R.Civ.P. 23(a).
The trial judge enjoys discretion to grant or deny class certification under rule 23. Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 84-85 (2001). While a plaintiff bears the burden of providing evidence “sufficient to enable the motion judge to form a reasonable judgment that the class meets the requirements of rule 23,” he or she “do[es] not bear the burden of producing evidence sufficient to prove that the requirements have been met.” Id. at 87; see id., quoting Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) (“neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule”). Thus, in deciding whether to grant a motion for certification, the trial court considers whether the plaintiff has reasonably met the prerequisites of Rule 23, rather than focusing on the substantive merits of his claims. See Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 606 (1985); see also Key v. Gillette Co., 90 F.R.D. 606, 608 (D.Mass. 1981) (“The decision to certify a class is distinct from a review of the merits of the case”).
Requirements of Mass.R.Civ.P. 23(a) and (b) Numerosity
“A class is numerous when joinder of all members is impracticable.” Brophy v. School Comm. of Worcester, 6 Mass.App.Ct. 731, 735 (1978). “Impracticable” in this sense means “impractical, unwise or imprudent,” rather than unfeasible. Id. In determining whether joinder is impracticable, the court considers efficiency, limitation of judicial resources, and expenses to the plaintiff. Id. at 736.
Commonality
To satisfy the commonality requirement, the plaintiff must show that “all the persons whom [he] profess [esl to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendant(s).” Spear v. H.V. Greene Co., 246 Mass. 259, 268 (1923). The members’ interests need not be identical, but must arise out of a common relationship to a definite wrong committed by the defendant against the class as a whole.
Typicality
“The typicality requirement may be satisfied by an allegation that the defendant acted consistently toward the members of a putative class.” Fletcher, 394 Mass. at 606. In other words, a plaintiff shows typicality where “(t]he conduct about which he complains is identical to the conduct affecting the class, and the legal theories under which he is pursuing relief are the same as those that might be pursued by the class.” Weld, 434 Mass. at 89. Such an “alignment of claims and legal theories” ensures that “the named plaintiff, in pursuing his or her own self-interest . . . will advance the interests of the class members.” Id. at 87, quoting 1 H. Newberg, Class Actions §3.13, at 3-76 (3d ed. 1992).
Adequacy
Plaintiffs seeking class certification must “fairly and adequately” represent the interests of the class. Mass.R.Civ.P. 23(a)(4). Specifically, the plaintiff must establish that there is no potential conflict between the named plaintiff and the class members and that his counsel is qualified, experienced and able to vigorously conduct the proposed litigation. Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).
Predominance and Superiority Requirements of Rule 23(b)
Once the plaintiff satisfies the four requirements of Rule 23(a), the court may certify the class if it finds that “questions of law or fact common to the members of the class predominate over any questions affecting only individual members,” and that a class action is “superior to other available methods for the fair and efficient adjudication of the controversy.” Mass.R.Civ.P. 23(b). These two conditions “introduce a highly discretionary element.” Baldassari v. Public Fin. Trust, 369 Mass. 33, 40 (1975).
*204 Common issues predominate when all of the class members’ injuries are caused by a “single course of conduct” undertaken by the defendants. See Weld, 434 Mass. at 92; see also id., quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000) (“[the] predominance requirement [is] satisfied by [a] ‘sufficient constellation of common issues [that] bind class members together’ and ‘cannot be reduced to a mechanical, single-issue test’ ”).
A class action is the superior method of adjudication if it maximizes judicial efficiency and grants court access to those plaintiffs who individually would be unable to litigate their claims.
Discussion
The plaintiff claims that the Gen-III seat belt buckles fail to conform to federal motor vehicle safely standards, particularly those that require buckles to “be designed to minimize the possibility of accidental release.” See 49 C.F.R. §571.209-S4.1(e). Plaintiffs breach of express warranty claim is based on language contained in a certification sticker affixed to each new Chrysler vehicle stating “this vehicle conforms to all applicable federal motor vehicle safety standards in effect on the date of manufacture shown above.” Plaintiffs also claim that Chrysler breached the implied warranty of merchantability by manufacturing and putting into commerce goods not fit for their ordinary use.
While DaimlerChrysler disputes that the plaintiff meets any of the requirements for class certification, the focus of the dispute is on whether the common issues predominate over issues or questions affecting only individual class members. One issue which presents a problem for the plaintiff in this regard is whether the Gen-III seat belt buckle is defective. The issue of whether or not the Gen-III seat belts are defective is relevant here to the extent that it is an element of the plaintiffs breach of warranty claims. DaimlerChrysler contends that the alleged defect in the Gen-III seat belt buckle, its susceptibility to accidental release, depends on its installation and placement in the particular vehicle, on the shielding available in a particular vehicle, and on the owner’s use of the belts. DaimlerChrysler points to testimony of the plaintiffs experts which, to some degree, supports its argument. Gen-III belts are installed differently in each vehicle model. Thus, DaimlerChrysler claims, whether the belts pose a risk of injury and the level of the risk they present require individual inquiries into the location, shielding, and installation of the seat belts in each class member’s vehicle.
The plaintiff, on the other hand, urges that all Gen-III buckles possess the same defect — they fail to minimize the possibility of accidental release and have a potentially dangerous protruding release button and cut-out cover edge. Therefore, plaintiff contends, the belts’ defect is a common question that will be resolved by common proof — regardless of seating position, type of buckle mount, type of latch plate, occupant use conditions or environmental factors. Further, while acknowledging that “varying accident situations” may occur, the plaintiff asserts that the Gen-III belts should have been designed to be safe in all of them. Thus, plaintiff suggests that whether the belts are defective and likely to cause injury is a question common to all class members, regardless of the vehicle’s year of manufacture or model or the use of the vehicle by the individual class member.
I agree with the conclusion of the court in Quacchia v. DaimlerChrysler Corp., 122 Cal.App.4th 1442, 19 Cal.Rptr.3d 508 (2004), that “[i]t is difficult to see how the risk of danger inherent in the design of the Gen-III buckle, and any concomitant benefit, could be evaluated without reference to the vehicles in which it is placed, since the buckles are used only in connection with the use of the vehicles. Given this predicate, there is ample evidence from which [this] court could reasonably conclude that issues common to the class would not predominate.”
Chrysler argues further that proving breach of express and implied warranties involves the “individualized aspect[s]” of notice and reliance. Therefore, Chrysler contends, common issues do not exist because resolution of the warranty claims would require individualized inquiries into whether the owner of the vehicle was even aware of the notice on the door panel and whether he or she relied on that notice.
“Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation of promise.” G.L.c. 106, §2-313(l)(a). Courts have indicated that the plaintiff must show at least some reliance on the defendant’s representations to successfully state a claim for breach of an express warranty. Stuto v. Corning Glass Works, 1990 WL 105615 (D.Mass.) (“[a]lthough no Massachusetts court has ruled explicitly on this issue, this court believes that some minimum of reliance is a required element of a breach of express warranty claim in this state”); DiRamio v. Crosby, Civil No. 03-4872 (Mass.Super.Ct. July 18, 2007) (Botsford, J.) (“[where] the legal claim raised by these disputed facts is one for breach of express warranty . . . the issue of detrimental reliance comes up”); Fahey v. R.J. Reynolds Tobacco Co., Civil No 92-7221 (Mass.Super.Ct. June 12, 1995) (Borenstein, J.) [4 Mass. L. Rptr. 27]. Therefore, where reliance of each class member is an essential element of plaintiffs breach of express warranty claim, the court will not be able to decide liability on a class-wide basis. See Olson v. Energy North, Inc., Civil No. 98-0228 (Mass.Super.Ct. Jan. 14, 1999) (Gants, J.) [9 Mass. L. Rptr. 494]. This result would be consistent with other decisions where courts have denied certification because plaintiffs have failed to show that all class members satisfied essential ele *205 ments of their claim. See Ditondo v. General Motors Corp., Civil No. 01-3578 (Middlesex Super.Ct. April 20, 2005) (Gershengorn, J.) (finding plaintiffs alleging negligent misrepresentation had not satisfied commonality requirement because they had failed to show that each class member had experienced a “brake pulsation problem” and had therefore suffered economic injury).
A plaintiff, however, need not prove reliance in asserting a breach of the implied warranty of merchantability. Haglund v. Phillip Morris, Inc., 446 Mass. 741, 746 (2006). “Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions.” Id., quoting Cigna Ins. Co. v. Og Saunatec, Ltd., 241 F.3d 1, 15 (1st Cir. 2001). The plaintiff establishes a breach, therefore, when he or she shows that a product is “defective and unreasonably dangerous” for the “ordinary purposes” for which it is “fit.” Haglund, 446 Mass. at 746. Specifically, in a design defect case, “if [the plaintiff] has offered evidence of safer alternative designs, he has done enough to permit the breach of warranty of merchantability claim ... to go to the jury.” Guerra v. Easco Aluminum Corp., Civil No. 96-2657 (Nov. 20, 2000) (Botsford, J.) [12 Mass. L. Rptr. 490]. However, as noted above, the issue of whether or not the Gen-III seat belt buckle is defective in a particular vehicle depends in part upon the location, shielding, installation, and seat position in that particular vehicle; therefore, as to the implied warranty claims, common issues do not predominate over questions affecting individual members of the class. Class certification on the implied warranty claim is not appropriate.
Finally, Chiysler claims that a class action is not the superior method of adjudicating the matter, because plaintiffs breach of warranty claims are “premised solely on alleged violations of a federal regulation” that is promulgated by the National Highway Traffic Safely Administration (“NHTSA”). Thus. Chrysler argues, it is NHTSA’s job to “investigate, order, and supervise a remedy” for these alleged violations. Chrysler has cited authority from other jurisdictions to support its position. See e.g., Ford Motor Co. v. Rice, 726 So.2d 626, 631 (Ala. 1998); American Suzuki Motor Corp. v. Superior Court, 37 Cal.App.4th 1291, 1299-1300 (1995); Ford Motor Co. v. Magill 698 So.2d 1244, 1245 (Fl.Dist.Ct.App. 1997).
“Although a court, in addressing the superiority requirement, may consider whether administrative proceedings which embrace the issue before the court can adequately resolve the controversy, whether the administrative adjudication is preferable over a class action may depend on the remedy available to the agency.” 2 Newberg, Class Actions §4.27 (4th ed. 2007). It is questionable whether the NHTSA can provide the precise relief sought by the plaintiff in this case. On the other hand, I am inclined to agree with the Alameda County Superior Court which stated, in discussing a motion for summary judgment in a similar case, that “[i]n the absence of injury to person or property, a claim regarding an unmanifested defect has many aspects of a regulatory proceeding that perhaps should be left to NHTSA in the case of automobiles . . .” Quacchia v. DaimlerChrysler, Case No. C-84383-2, Order Granting Motion of Defendant for Summary Judgment, p. 5. While such an alternative remedy is available, I do not find it is superior to an action in this court, which is capable of deciding issues of breach of warranty.
Conclusion
For the foregoing reasons, I find that common questions do not predominate over issues applicable to individual members of the proposed class and, therefore, I deny the plaintiffs motion to certify this matter as a class action.
ORDER
For the reasons explained above, the Plaintiffs Motion for Class Certification is DENIED.