Troy, Paul E., J.
The plaintiff, Willie Evans (“Plaintiff’) commenced this action alleging that defendants Lorillard Tobacco Co. (“Lorillard”), Garber Bros., Inc. (“Garber”), George Melhado & Co. (“Melhado”), and Franklin Wholesalers, Inc. (“Franklin”) (collectively, “Defendants”), caused the death of his mother, Marie R. Evans (“Evans”), through their design, marketing, distribution, and sale of Newport brand cigarettes. The action is before this court on the Defendants’ motions to dismiss[3] the Plaintiffs complaint. For the following reasons, the Defendants’ motions are DENIED in part and ALLOWED in part.
BACKGROUND
For purposes of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the Plaintiffs complaint.
Newport cigarettes contain menthol which works “to facilitate the initiation of smoking and the development of a smoking habit in children.” Complaint, 20. Lorillard is the designer, manufacturer, distributor, and seller of Newport cigarettes. During the time Evans purchased and smoked Newport cigarettes, defendants Garber, Melhado, and Franklin distributed Newport cigarettes in the areas where Evans lived and worked.
Growing up in the Orchard Park housing project in Roxbury, Massachusetts, Evans attended Newport cigarette giveaway events in her neighborhood starting in approximately 1957 when she was about nine years old. At these giveaway events, Lorillard representatives gave her free samples of Newport cigarettes despite her age. When she was a young teenager, Evans began smoking the Newport cigarettes she received at the giveaway events not only because they were free, *93 but also because she was influenced by Lorillard’s marketing of Newport cigarettes. Lorillard advertised Newport cigarettes in Jet and Ebony, African-American magazines to which Evans had access. The advertisements showed attractive African-American men and women smoking Newport cigarettes and described the cigarettes as “fresher than any other menthol cigarette.” Id. 18. Lorillard also used “various misleading euphemisms to conceal the true role of nicotine, such as ‘satisfaction,’ ‘impact,’ ‘strength,’ ‘rich aroma,’ and ‘pleasure.’ ” Id. 23. Evans was addicted to Newport cigarettes for over forty years, smoking at least one and a half packs a day to as many as four packs a day.
Lorillard promised[4] the public that it would lead the effort to discover and disclose the truth about smoking and health, recognizing that such research and disclosures “were necessary for the protection of smokers of Lorillard-brand cigarettes, including . . . Evans.” Id. 52. Through industry research spanning decades, Lorillard has learned that the nicotine in cigarettes is addictive, and that Newport cigarettes cause such diseases as lung cancer and contain carcinogenic elements that increase the dangers of smoking. Rather than fulfill its promise to disclose this information to smokers such as Evans, however, Lorillard has concealed and suppressed the true facts about the health hazards of smoking Newport cigarettes, denied that nicotine is addictive, and, until recently, claimed that nicotine is important to cigarettes for taste.
Therefore, Lorillard’s knowledge of the material facts about smoking, health, and addiction was vastly superior to the knowledge of Evans and other members of the general public who purchased, used, and consumed Lorillard’s cigarettes. Public access to these facts known by Lorillard has been exclusively within its control." Id. 43. Moreover, Lorillard has controlled the nicotine content in Newport cigarettes in order to create and sustain addiction in smokers such as Evans. In fact, in April 1994, Lorillard’s then President and Chief Executive Officer, Andrew H. Tlsch (“Tisch”) testified under oath before the Congressional Subcommittee on Health and the Environment that nicotine is not addictive.
At the time Evans began smoking Newport cigarettes, Evans did not know that cigarette smoking causes illnesses such as cancer, she did not know that the nicotine in Newport cigarettes is addictive, and she did not know that Lorillard added menthol to Newport cigarettes in order to encourage the development of smoking habits in children. Evans had a heart attack in 1984 when she was approximately thirty-eight years old, at which time she learned that smoking causes diseases and that the addition of menthol made Newport cigarettes more dangerous to her health than cigarettes without the addition of menthol.
Evans made several futile attempts to quit smoking after her 1984 heart attack. By the time she was diagnosed with small cell lung cancer in December 2001, the cancer had already spread to her brain, liver, and adrenal glands, and her doctor told her she had three to six months to live. Evans underwent four chemotherapy treatments that rendered her bedridden and unable to eat. Evans died on June 20, 2002.
As executor of Evans estate, the Plaintiff filed a complaint against the Defendants alleging fraud and misrepresentation (Count I, against Lorillard); volun-taiy undertaking of a duty (Count II, against Lorillard); breach of warranty (Count III, against the Defendants); public nuisance (Count IV, against Lorillard); battery (Count V, against Lorillard); violations of G.L.c. 93A, §9 (Count VI, against the Defendants); negligence (Count VII, against the Defendants); and wrongful death (Count VIII, against the Defendants).
DISCUSSION
In deciding a motion brought pursuant to Rule 12(b)(6), the court must accept as true the complaint’s well-pleaded factual allegations and any reasonable inferences in the plaintiffs favor that may be drawn from those allegations. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must give the complaint a generous reading and the plaintiff the benefit of the doubt. New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988); Kipp v. Kuelcer, 7 Mass.App.Ct. 206, 210 (1979). A “rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiffs claims);]” rather, a motion for summary judgment is more appropriate. Reardon v. Commissioner of Corr., 20 Mass.App.Ct. 946, 947 (1985); Wrightson v. Spaulding, 20 Mass.App.Ct. 70, 72 (1985).
The Defendants have moved to dismiss the Plaintiffs claims against them for failure to state a claim upon which relief can be granted because the Plaintiff cannot satisfy the essential elements of the claims and because, as to conduct that the Plaintiff alleges occurred after June 30, 1969, certain claims are preempted by the Federal Cigarette Labeling and Advertisement Act.
I. Federal Cigarette Labeling and Advertisement Act
The Defendants allege that insofar as the Plaintiffs complaint concerns the Defendants’ alleged conduct occurring after June 30, 1969, it is preempted by the Federal Cigarette Labeling and Advertisement Act (“FCLAA”), set forth at 15 U.S.C. §§1331-1341. With the FCLAA, Congress “crafted a comprehensive federal scheme governing the advertising and promotion of cigarettes.” Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001). Section 1334 of title 15 of the United *94 States Code, titled “Preemption,” “unequivocally precludes the requirement of any additional statements on cigarette packages provided in [15 U.S.C.] §1333.” Id. at 542, citing 15 U.S.C. § 1334(a).[5] The preemption provision further provides that “[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.” 15 U.S.C. §1334(b) (emphases added); see Lorillard Tobacco Co., 533 U.S. at 542 (“Without question, the second clause is more expansive than the first; it employs far more sweeping language to describe the state action that is pre-empted”). The statute expressly states that the effective date of 15 U.S.C. §1334 is July 1, 1969.
The Supreme Court in Cipollone v. Liggett Group, Inc. addressed the issue of whether this preemption provision “encompassed state common-law claims.” 505 U.S. 504, 516 (1992).[6] Acknowledging the presumption against preemption, the Court held that common-law damages actions impose “requirements and prohibitions” because such actions “are premised on the existence of a legal duly,” and that “the phrase ‘state law’ . . . include[s] common law as well as statutes and regulations.” Id. at 522. “Congress’ enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted!,]” however, id. at 517 (emphasis added); therefore, the Court had to consider individually each of the plaintiffs “common-law claims to determine whether it [was] in fact preempted.” Id. at 523.
“The central inquiry in each case is straightforward: . . . whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion, giving that clause a fair but narrow reading.” Id. at 523-24 (second and third ellipses in original) (footnote omitted). Thus, “[t]he appropriate inquiry is not whether a claim challenges the ‘propriety’ of advertising and promotion, but whether the claim would require the imposition under state law of a requirement or prohibition based on smoking and health with respect to advertising or promotion.” Id. at 525; see Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 76-77 (1st Cir. 1997) (“This observation indicates that the relevant inquiry focuses not upon any relation between advertising and the motivation behind a state law, but upon the law itself and any connection it might have with advertising activities” (emphasis in original)). This court will apply this analysis to those claims in the Plaintiffs complaint that the Defendants argue must be preempted.[7] It is undisputed that the FCLAA does not preempt any allegation concerning the Defendants’ conduct occurring prior to June 30, 1969. As discussed with respect to the claims below, the FCLAA also does not preempt any other aspect of the Plaintiffs complaint.[8]
A. Count I — Fraud and Misrepresentation
In Count I, the Plaintiff alleges that Lorillard willfully and recklessly failed to disclose to Evans the health hazards and addictive nature of smoking Newport cigarettes and that Lorillard “waged an aggressive campaign of disinformation about the health consequences of cigarette smoking.” Complaint, 2. Among this disinformation, the Plaintiff points to Lorillard’s advertisements in which it marketed Newport cigarettes as “fresher than any other menthol cigarette[,]” id. 18, and Lorillard’s use of “various misleading euphemisms to conceal the true role of nicotine, such as ‘satisfaction,’ ‘impact,’ ‘strength,’ ‘rich aroma,’ and ‘pleasure.’ ” Id. 23.
In Cipollone, the Court considered the plaintiffs two fraudulent misrepresentation theories. 505 U.S. at 527-29. The first theoiy was essentially a failure to warn theory in which the plaintiff alleged that the defendants, “through their advertising, neutralized the effect of federally mandated warning labels ...” id. at 527, "and that they had possessed, but had ‘ignored and failed to act upon’ medical and scientific data indicating that ‘cigarettes were hazardous to the health of consumers!.]’ ” Id. at 510 (first and second alteration added) (ellipses in original).[9] The FCLAA did preempt this claim because it was “predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking.” Id. at 527.
Unlike in Cipollone, the Plaintiffs misrepresentation claim does not specifically make an allegation concerning Lorillard’s conduct with respect to the federally required warning labels, ad though it does concern advertising and promotion. See Johnson v. Brown & Williamson Tobacco Corp., 122 F.Sup.2d 194, 201 (D.Mass. 2000) (“Johnson I”) (noting that “any communication by a cigarette manufacturer with the public constitutes ‘advertising and promotion’ under the [FCLAA]”). Despite the absence of language concerning warning labels, Lorillard argues that, by claiming that Lorillard failed to disclose to consumers the alleged health hazards associated with smoking, the Plaintiff is alleging that Lorillard has a legal duty to make such a disclosure. With this allegation, Lorillard further asserts, the Plaintiff is claiming that Lorillard’s advertising should have included additional or more clearly stated warnings. Lorillard’s attempt to turn this fraud and misrepresentation claim into a failure to warn claim fails.
As noted, the Plaintiff makes no mention of Lorillard’s warnings. Rather, the Plaintiff alleges that Lorillard knew of certain facts and intentionally misrepresented and failed to disclose those facts to the public, including Evans, both directly and through its trade association, and that it “expressly [told] the *95 public to place special trust and confidence in Lorillard’s promise to discover and disclose all material facts about smoking, health and addiction.” Complaint, 45; see Johnson I, 122 F.Sup.2d at 201. These allegations are distinguishable from the plaintiffs failure to warn claim in Cipollone which the FCLAA preempted. See 505 U.S. at 524, 528.
The plaintiffs second fraudulent misrepresentation theory in Cipollone alleged “intentional fraud and misrepresentation both by ‘false representation of a material fact [and by] conceal[ment of] a material fact.’ ” Id. at 528 (alterations in original). The Plaintiffs Count I is more like this second theory in Cipollone in that the Plaintiff alleges that Lorillard’s use of “various misleading euphemisms to conceal the true role of nicotine, such as ‘satisfaction,’ ‘impact,’ ‘strength,’ ‘rich aroma,’ and ‘pleasure!,]’ ” Complaint, 23, and the description of Newport cigarettes as being “fresher than any other menthol cigarettes” constituted misrepresentation. Id. 23. The Cipollone Court held that the FCLAA did not preempt this theory “insofar as those claims rel[ied] on a state-law duly to disclose such facts through channels of communication other than advertising or promotion.” 505 U.S. at 528 (emphasis added).
The Plaintiff alleges that Lorillard made its comments regarding the freshness of Newport cigarettes in print advertisements. The Plaintiffs complaint does not specify the context in which Lorillard allegedly used euphemisms to conceal the true effect of nicotine. As noted above, however, “any communication by a cigarette manufacturer with the public constitutes ‘advertising and promotion’ under the” FCLAA. Johnson I, 122 F.Sup.2d at 201. Therefore, this court presumes that they constitute advertising and promotion. See id.
To the extent that these misrepresentation claims did “arise with respect to advertising and promotions (most notably claims based on allegedly false statements of material fact made in advertisements)!,]” Cipollone, 505 U.S. at 528, the FCLAA still does not preempt them because “[s]uch claims are predicated not on a duty ‘based on smoking and health’ but rather on a more general obligationthe duty not to deceive.” Id. at 528-29. “[T]he phrase [in 15 U.S.C. §1334(b)] ‘based on smoking and health’ fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements.” Id. at 529. The Court reasoned that, with the FCLAA, Congress did not intend “to insulate cigarette manufacturers from longstanding rules governing fraud . . . [or] to proscribe the regulation of deceptive advertising.” Id. Therefore, here, the FCLAA does not preempt the Plaintiffs allegations that Lorillard engaged in fraudulent misrepresentations in the context of its advertising and promotion.[10]
The FCLAA does not preempt Count I.
B. Count II — Voluntary Undertaking of a Duty
In Count II, the Plaintiff claims that Lorillard promised the public, including Evans, that it would research tobacco use and human health and that it would impart the results of that research to the public completely and accurately. In Cipollone, the plaintiff did not allege a “voluntary undertaking” claim; he did, however, allege breach of express warranty. Id. at 525. The Court’s analysis of this claim is analogous to Count II. See id. at 525-26.
When considering the plaintiffs breach of an express warranty claim in Cipollone, the Court held that liability for such a breach “derives from, and is measured by, the terms of that warranty. Accordingly, the ‘requirement[s]’ imposed by an express warranty claim are not ‘imposed under state law,’ but rather imposed by the warrantor." Id. at 525 (alteration and emphasis in original). The Court concluded that “a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a ‘requirement... imposed under State law' within the meaning of’ 15 U.S.C. § 1334(b). Id. at 526 (ellipses and second emphasis in original). Here, Count II is predicated on Lorillard’s promise to research the effects of cigarette smoking on health and to impart those results to the public. State law did not impose this promise on Lorillard; Lorillard made this promise voluntarily. See id. The FCLAA therefore does not preempt Count II.
C. Count III — Breach of Warranty
In Count III, the Plaintiff alleges that the Defendants breached their warranty that the Newport cigarettes that they designed, manufactured, marketed, distributed, and sold were merchantable and fit for the ordinary purposes for which they were intended because they were carcinogenic, addictive, and contained dangerous levels of such substances as tar and nicotine.[11] See G.L.c. 106, §2-314. As noted, the plaintiffs complaint in Cipollone alleged a claim of breach of express warranty. “While the general duty not to breach warranties arises under state law, the particular ‘requirement . . . based on smoking and health... with respect to the advertising or promotion [of] cigarettes’ in an express warranty claim arises from the manufacturefs statements in its advertisements.” Cipollone, 505 U.S. at 526 (ellipses and alteration in original) (emphasis added).
Although the Plaintiffs claim is breach of an implied warranty rather than an express warranty, see Complaint, 59, the rationale against preemption is the same. The implied warranty of merchantability is arguably state-imposed given the provision in G.L.c. 106, §2-314 that “a warranty that the goods shall be merchantable is implied in a contract for their sale ... Goods to be merchantable must at least be such as . . . are fit for the ordinary purposes for which such goods are used . . .” G.L.c. 106, §2-314(1), (2)(c). Any implied warranty “based on smoking and health . . . with respect to the advertising and promotion of ciga *96 rettes[,]” however, 15 U.S.C. § 1334(b), “arises from [the Defendants’] statements [implied or otherwise] in [their] advertisements.” Cipollone, 505 U.S. at 526. Therefore, the Defendants created the implied warranty that the Plaintiff alleges they breached, and their liability will “derive! ] from, and [be] measured by, the terms of that warranty.” Cipollone, 505 U.S. at 525.
Moreover, Count III essentially alleges that the Defendants breached the implied warranty of merchantability because Newport cigarettes were defectively designed. See Johnson I, 122 F.Sup.2d at 202. The FCLAA “does not preempt ‘state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes.’ ” Id. at 201-02, quoting Cipollone, 505 U.S. at 523. Consequently, insofar as the Plaintiff alleges breach of the implied warranty of merchantability by defective design, the FCLAA does not preempt Count III.
D.Count V — Battery
In Count V, the Plaintiff alleges that Lorillard committed a battery by distributing Newport cigarettes to Evans when she was a child through free giveaways and by intentionally concealing the hazardous and addictive effects of smoking Newport cigarettes so that she was unable to appreciate the danger. Although, arguably, the giveaways Lorillard conducted constitute promotional conduct within the scope of 15 U.S.C. § 1334(b), they presumably fall outside the effective date of the FCLAA, June 30, 1969, given that they continued “for several years” after 1957. Complaint, 16. The FCLAA does not preempt this pre-1969 conduct.
Even assuming that the conduct that the Plaintiff complains of in Countv. occurred after June 30, 1969, and concerns advertising or promotion,[12] however, the FCLAA still does not preempt the claims. In conducting preemption analysis under 15 U.S.C. §1334(b), “[t]he appropriate inquiry is not whether a claim challenges the ‘propriety’ of advertising and promotion, but whether the claim would require the imposition under state law of a requirement or prohibition based on smoking and health with respect to advertising and promotion.” Cipollone, 505 U.S. at 525. The Plaintiffs Count V, read narrowly, appears to be predicated on a common-law prohibition of distributing cigarettes without disclosing to consumers the hazardous effects of smoking.
Cipollone, however, does not require such a narrow reading of Count V. In the context of the plaintiffs fraudulent misrepresentation claim, the Court held that, in enacting the FCLAA, Congress did not intend “to insulate cigarette manufacturers from longstanding rules governing fraud . . . [or] to proscribe the regulation of deceptive advertising.” Id. at 529. The Court reasoned that failure to analyze the plaintiffs fraud claim at this level of generality “would conflict both with the background presumption against preemption and with legislative history that plainly expresses an intent to preserve the ‘police regulations’ of the States.” Id. at 529 n.27; see id. at 529 n.26 (noting that FCLAA does not affect such “police regulations” as “the taxation or the sale of cigarettes to minors, or the prohibition of smoking in public buildings ...” (quoting S.Rep. No. 91-566, at 12 (1969)).
The Court distinguished the plaintiffs fraud claim from its failure to warn claim and construed the latter claim narrowly, holding that to construe it generally “would render the 1969 amendments [to the FCLAA] meaningless and would pay too little respect to Congress’ substantial reworking of the [FCLAA].” Id. Moreover, “[u]nlike state-law obligations concerning the warnings necessary to render a product ‘reasonably safe,’ state-law proscriptions on intentional fraud rely only on a single, uniform standard: falsity." Id. at 529. Therefore, a claim of battery is more like a claim of fraud in that it relies on the uniform standard of an offensive, non-consented-to touching rather than obligations concerning the required warnings. See id.
Accordingly, to the extent that Count v. concerns conduct occurring after June 30, 1969, the FCLAA does not preempt Count V.
E.Count VI — Violations of G.L.c. 93A, §9
In Count VI, the Plaintiff alleges that the Defendants violated G.L.c. 93A, §9, by Loriflard’s misrepresentations of material facts with respect to the addictive and hazardous nature of Newport cigarettes, by Lorillard’s failure to disclose facts to Evans which might have influenced her not to purchase Newport cigarettes, and by the Defendants’ breach of the implied warranty of merchantability through their manufacture, distribution, and sale of Newport cigarettes in a defective condition that was unreasonably dangerous to consumers, including Evans. The Defendants argue that the FCLAA preempts Count VI because it is a claim that the Defendants concealed information concerning the hazardous and addictive nature of Newport cigarettes. Such a claim, the Defendants assert, is the “converse” of a state law requiring such disclosure.
As with Count I, fraud and misrepresentation, this count is “predicated not on a duty ‘based on smoking and health’ but rather on a more general obligationthe duly not to deceive.” Cipollone, 505 U.S. at 528-29. Additionally, as with Count III, because the alleged implied warranty was not state-imposed but was created by the Defendants, and to the extent it alleges a design defect, it is not within the scope of the FCLAA. Consequently, the FCLAA does not preempt Count VI.
F.Count VII — Negligence
In Count VII, the Plaintiff alleges that the Defendants owed Evans a duty to exercise reasonable care but that they breached that duty by failing to exercise reasonable care in their manufacture, marketing, distribution, and sale of Newport cigarettes, in Lorillard’s *97 distributing Newport cigarettes to children, including Evans, at giveaways, and by Lorillard’s marketing Newport cigarettes to children, including Evans.[13] The Defendants argue that with this claim, the Plaintiff alleges that the Defendants undermined the awareness of the public, including Evans, through their advertising and through their concealment of information. Just as with Counts I and VI, however, this claim is “predicated not on a duty ‘based on smoking and health’ but rather on a more general obligationthe duly not to deceive.” Id. Therefore, the FCLAA does not preempt Count VII.
II. Judicial Notice[14]
The Defendants argue that the hazardous and addictive natures of cigarette smoking is common knowledge, therefore any reliance by Evans on the Defendants’ representations, false or otherwise, was unreasonable as a matter of law. Based on this theory, the Defendants seek to dismiss Counts I, III, V, VI, VII, and VIII.[15] A court may take judicial notice of facts or law “only when they are indisputably true. Matters of common knowledge or observation within the community may be judicially noticed because they so qualify.” Nantucket v. Beinecke, 379 Mass. 345, 352 (1979). “Facts which ordinarily are not known without the aid of expert testimony or other proof cannot be said to be matters of common knowledge.” Commonwealth v. Hartman, 404 Mass. 306, 313 n.9 (1989), quoting Mady v. Holy Trinity Roman Catholic Polish Church, 223 Mass. 23, 26 (1916). Additionally, “(jJudicial notice is not to be extended to personal observations of the judge or juror.” Nantucket, 379 Mass. at 352.
The Defendants rely on Wolf v. Philip Morris, Inc., Civil No. 99-1260B (Norfolk Super.Ct. June 21, 2001) (Lauriat, J.), and Massachusetts Laborers’ Health & Welfare Fund v. Philip Morris, Inc., 62 F.Sup.2d 236 (D.Mass. 1999), for their argument that given that the risks of smoking have been common knowledge for decades, the Plaintiff cannot allege that Evans’s reliance on Lorillard’s alleged misrepresentations was reasonable. In Massachusetts Laborers’ Health & Welfare Fund, the plaintiffs complaint acknowledged that, “starting in the 1950s and continuing to the present, the results of research linking smoking to cancer, emphysema, and other health problems have been well publicized.” 62 F.Sup.2d at 242. In response to this “research already available to the public that indicated smoking was dangerous!,]” id., the defendants “engaged in a conspiracy to conceal the harmful effects of smoking on health.” Id. at 239. Therefore, it was “a fundamental premise of the plaintiffs claims that smoking is hazardous to health and that the defendants were trying to obscure that truth. It follows that those who warned of the health risks of smoking must have been speaking the truth.” Id. at 243 (emphasis added).
In that case, the plaintiffs complaint also indicated that the plaintiff was “confronted with inconsistent or contradictory representations ...” Id. at 242. In such a situation, the plaintiff could not “reasonably rely on one side of the controversy without attempting to resolve the inconsistency or contradiction.” Id. at 242-43. The plaintiffs complaint offered “no basis for concluding that it was reasonable for the plaintiff to rely on the defendants’ information as opposed to the contradictory information from other sources also in the public domain.” Id. at 243 (emphasis in original). The absence of this allegation of reasonableness in the complaint caused the court to dismiss the plaintiffs claims of fraud, misrepresentation, and deceptive trade practices rather than take judicial notice of the hazards of smoking. Id.
Although the Plaintiff in this case has alleged that the Defendants have known about the hazards and addictiveness of cigarette smoking, he has not contended that Evans knew of this information, or that it was in the public domain. See Complaint, 43 (alleging public access to material facts about smoking, health, and addiction were “exclusively within [Lorillard’s] control”). Massachusetts Laborers’ Health & Welfare Fund therefore does not support the Defendants’ request that this court take judicial notice.
This court is also not persuaded by Wolf to take judicial notice that the hazardous and addictive natures of cigarette smoking has been common knowledge at least since 1957. Like in Massachusetts Laborers' Health & Welfare, the plaintiffs complaint in Wolf” acknowledge^] widespread reporting of the hazards of cigarette smoking beginning in the late 1950s.” Civil No. 99-1260B, at 15. Unlike in Massachusetts Laborers’ Health & Welfare, however, the court decided to take “judicial notice of the fact that the smoking of cigarettes poses serious health risks, including the risk of addiction, and that such risks have been generally known and recognized by the public as far back as the late 1930s . . .” Id. at 8. The court did not base this decision solely on the allegation in the plaintiffs complaint regarding the widespread reporting of the hazards of smoking. See id. at 15. Rather, the court also relied on “[well-]reasoned decisions . . . [that] conclude[d], as a matter of law, that the dangers of smoking have long been common knowledge.” Id. at 7, citing Cipollone, 505 U.S. at 513, Allgood v. R.J. Reynolds Tobacco Co., 80 F.3d 168, 172 (5th Cir. 1996), Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 236 (6th Cir. 1988), Insolia v. Philip Morris, Inc., 53 F.Sup.2d 1032, 1037, 1040-41 (W.D.Wis. 1999),[16] Paugh v. R.J. Reynolds Tobacco Co., 834 F.Sup. 228, 231 (N.D. Ohio 1993), Ploch v. City of St. Louis, 138 S.W.2d 1020, 1023 (Mo. 1940), State v. Olson, 144 N.W. 661, 667 (N.D. 1913).
In Johnson I, similar to Wolf, the court held that it was “firmly convinced that the risks of smoking were quite clear to the population at large before 1969, . . . [and that] the widespread publicity surrounding the 1964 report by the Surgeon General’s advisory com *98 mittee concerning the health risks of smoking was sufficient to charge all reasonable consumers with general knowledge of such health risks at least as of 1964.” Johnson I, 122 F.Sup.2d at 204 (internal citations omitted), citing Guilbeault v. R.J. Reynolds Tobacco Co., 84 F.Sup.2d 263, 273 (D. R.I. 2000). The court took judicial notice in response to the plaintiffs allegation in his complaint that “[a]t all times relevant to this matter, the ordinary consumer . . . did not, in the exercise of ordinary diligence, know of the likelihood or the severity of the risks from using tobacco products . . Id. (alteration and ellipses in original). The court concluded that the plaintiffs “claim that nearly all Americans were unaware of the health risks associated with smoking prior to 1969 [was] simply without foundation.” Id.
This court does not accept, based on this court’s (Lauriat, J.) holding in Wolf or the District Court’s holding in Johnson I, that the health hazards and addictiveness of cigarette smoking have been common knowledge to Evans since a certain date. First, Evans began smoking Newport cigarettes sometime after 1957. This date is prior to the 1964 report of the Surgeon General’s advisory committee stating that cigarette smoking is a health hazard, Cipollone, 505 U.S. at 513, and prior to the enactment of the 1965 version of the FCLAA mandating warnings on cigarette packages. Id. at 514. Second, the Plaintiff alleges that “(s]oon after . . . Evans began smoking Newport cigarettes, she became addicted to smoking and struggled unsuccessfully to overcome a lifelong addiction to Newport cigarettes.” Complaint, 21. Thus, by the time that these two eventsthe advisory committee’s report and the requirement of warning labels on cigarette packagesoccurred, Evans was already addicted. See, e.g., Inzerilla v. The Am. Tobacco Co., Civil No. 11754/96, 2000 WL 34016364, *6 (N.Y.Sup.Ct. Oct. 27, 2000) (Berke, J.) (rejecting defendant’s argument that “decedent knew or should have known of the carcinogenic risk of smoking from at least” the time when labels were required on cigarette packages “because it overlooks the element of addiction . .. [meaning that] decedent allegedly learned of the carcinogenic properties of cigarettes at a time when addiction allegedly prevented her from acting upon that knowledge”).
Moreover, even if this court were persuaded “to charge all reasonable consumers with general knowledge of such health risks” as of a certain date, see Johnson I, 122 F.Sup.2d at 204 (emphasis added), Evans was a child at the time she received Newport cigarettes at the giveaways and “a young teenager” when she began to smoke. See Complaint, 17. This court is not willing to hold that Evans is the “reasonable consumer” given the age at which she began to smoke, and given the explicit allegations in the Plaintiffs complaint that when Evans began smoking “and for years thereafter,” Evans was unaware of the hazardous and addictive nature of cigarette smoking. Id. 19; see id. 27-28 (contending that Evans was influenced and confused by Lorillard’s “campaign of misinformation” intended “to mislead the public about the health risks of smoking and to create controversy in the minds of smokers about the link between smoking and human disease”); see also Fairneny, 422 Mass. at 470 (requiring court to accept facts in complaint as true for purposes of motion to dismiss); New England Insulation Co., 26 Mass.App.Ct. at 29 (holding that, on motion to dismiss, court must give complaint generous reading and give plaintiff benefit of doubt). Consequently, at this point in the litigation, this court will not take judicial notice of the fact that the hazards and addictiveness of cigarette smoking have been common knowledge to Evans, at least since she began smoking.[17]
III. The Plaintiffs Claims
The Defendants also contend that the Plaintiffs complaint against them must be dismissed for failure to state a claim upon which relief can be granted because the Plaintiff cannot satisfy the essential elements of the claims. For the following reasons, the Defendants’ motions to dismiss on these grounds are ALLOWED in part and DENIED in part.
A. Count I — Fraud and Misrepresentation
To state a claim for fraud and misrepresentation, the Plaintiff must establish “that [Lorillard] made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the [P]laintiff to act thereon, and that the [P]laintiff relied upon the representation as true and acted upon it to his damage.” Danca v. Taunton Savs. Bank, 385 Mass. 1, 8 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963); Stolzoff v. Waste Sys. Int'l 58 Mass.App.Ct. 747, 759 (2003). Failing to disclose a material fact is also actionable as a misrepresentation. See Danca, 385 Mass. at 8. Lorillard argues that the Plaintiff has not satisfied the particularity requirements of Mass. Rule Civ. P. 9(b), and that the Plaintiff has not stated a claim for relief because he cannot establish that Evans relied upon the alleged representation as true. See Equipment & Sys. for Indus., Inc. v. Northmeadows Constr. Co., Inc., 59 Mass.App.Ct. 931, 932 (2003) (holding that although “ ‘plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim],]’. . . [R]ule 9(b) heightens the pleading requirements placed on plaintiffs who allege fraud and deceit”).
As an initial matter, the Plaintiff alleged that Lorillard promised the public, including Evans, to discover and disclose “the truth about cigarettes” in order to induce the public to trust Lorillard. Id. 45. “A statement on which liability for fraud may be based must be one of fact; it may not be one of . . . matters promissory in nature.” Stolzoff, 58 Mass.App.Ct. at 759. Lorillard’s promise is therefore not actionable as a misrepresentation, and Lorillard’s motion to dismiss Count I is ALLOWED as to this allegation.
*99 1. Mass.R.Civ.P. 9(b)
Rule 9(b) of the Massachusetts Rules of Civil Procedure provides that, “(i]n all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity.” In contrast, claims of “(m)alice, intent, knowledge, and other condition of mind of a person may be averred generally.” Mass.R.Civ.P. 9(b). The allegations of fraud must be particular enough so “ (t)here can be no question that the defendants were warned adequately concerning the particular statements which constituted the alleged fraud so that they could prepare their defense.” Friedman v. Jablonski, 371 Mass. 482, 488-89 (1976). The Plaintiff must “allege who made the statements, their falsity!,] ... to whom the statements were made, the period during which they were made, that they were made to induce [Evans’] reliance, and that [Evans] did rely to [her] harm.” Id. at 488.
“ [Although a bare statement that defendant’s ‘fraudulent conduct harmed’ plaintiff . . . , standing alone, is insufficient, [r]ule 9(b) must be read with the [r]ule 8(a) mandate that the pleading contain a short and plain statement of the claim.” Lazzaro v. Holladay, 15 Mass.App.Ct. 108, 110-11 (1983) (ellipses and second and third alterations in original), quoting James W. Smith & Hiller B. Zobel, Rules Practice, §9.2 (1974). “Rule 9(b) does not require the claimant to set out in detail all of the facts upon which he bases his claim, nor does it require him to plead detailed eviden-tiaiy matter.” Id., quoting Smith & Zobel, supra. At the same time, however, “an oblique remark in the complaint suggesting]” the representation at issue was fraudulent does not satisfy Rule 9(b). Charbonnier v. Amico, 367 Mass. 146, 152 (1975).
The Plaintiff has alleged that at least since Evans first began smoking Newport cigarettes, Lorillard knowingly concealed information from the public, including Evans, in order to mislead and confuse the public about the hazardous nature of smoking Newport cigarettes. Complaint, 26. Although a failure to disclose can constitute a misrepresentation, the Plaintiffs allegation that Lorillard failed to make these disclosures “at the time [Evans] began smoking and for many years thereafter],]” id., is too vague to satisfy Rule 9(b)’s particularity requirement because it does not provide Lorillard with adequate warning concerning the omissions that constitute the alleged fraud so that it can prepare its defense. Friedman, 371 Mass. at 488. Lorillard’s motion to dismiss Count I is therefore ALLOWED as to this allegation that Lorillard failed to make material disclosures to Evans during the time she was a Newport cigarette smoker.
The Plaintiff further alleges that, “[a]t all times relevant to this Complaint, Lorillard knowingly made material misrepresentations and/or omissions to the public, including . . . Evans about the link between smoking and various human diseases, and, in particular, misrepresented that nicotine is addictive.” Complaint, 22. “Rather than acknowledging what it has known for yearsnamely, that the primarily, if not sole, function of nicotine is to provide a pharmacological effect on the smoker that leads to addictionLorillard has instead used various misleading euphemisms to conceal the true role of nicotine, such as ‘satisfaction,’ ‘impact,’ ‘strength,’ ‘rich aroma,’ and ‘pleasure.’ ” Id. 23. Moreover, “very recently, top Lorillard executives have claimed falsely that nicotine is important in cigarettes for taste.” Id. These allegations, too, do not satisfy Mass.R.Civ.P. 9(b)’s particularity requirement. The phrase “[a]t all times relevant to this complaint,” id. 22, is too vague as that time period spans from 1957, when Evans first began attending Lorillard’s free giveaways, to 2002, when Evans died. The phrase “very recently” similarly fails to provide the requisite particularity. See id. 23.[18] Additionally, the Plaintiffs list of “euphemisms” that Lorillard allegedly used to mislead the public also fail to satisfy Mass.R.Civ.P. 9(b) because, again, the Plaintiff does not indicate “the period during which they were made . . .” Friedman, 371 Mass. at 488. Lorillard’s motion to dismiss these allegations is therefore ALLOWED.
The Plaintiff has also alleged that Lorillard ran print advertisements of attractive people smoking Newport cigarettes along with the phrase “fresher than any other menthol cigarette.” Complaint, 18. The Plaintiff further alleged that the combination of the advertisement and the statement therein left Evans “confused about the health risks of smoking and unconvinced that smoking caused human disease until her heart attack in 1984.” Id. 28.[19] Therefore, as a result of Lorillard’s misinformation and failure to disclose the hazardous nature of smoking Newport cigarettes, Evans smoked Newport cigarettes for forty years. Evans died of lung cancer in 2002. According to the allegations in the Plaintiffs complaint, these print advertisements ran “when [Evans] was a teenager.” Id. 18.
Evans was a teenager between the years 1961 and 1967.[20] This allegation is particular enough for Lorillard to prepare a defense as it specifies the statement, the locations of the statement, and the time range during which the advertisements containing that statement appeared in the magazines. See Friedman, 371 Mass. at 488-89. Accordingly, Lorillard’s motion to dismiss Count I as to this allegation is DENIED because the allegation satisfies the particularity requirement of Mass.R.Civ.P. 9(b).
Finally, the Plaintiff alleges that in 1994 Tisch testified before Congress that nicotine is not addictive. This allegation similarly satisfies Mass.R.Civ.P. 9(b) as it sets forth who made the false statement intended to mislead the public, including Evans, and when the statement was made. Lorillard’s motion to dismiss Count I is therefore DENIED as to this allegation.
*100 2. Reasonable Reliance
As noted above, one of the required elements of a claim for fraud and misrepresentation is that the plaintiff “reasonably relied” on the defendant’s misrepresentations. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523 (1989). Given this court’s conclusions, above, this argument is only relevant with respect to Evans’s reliance on Tisch’s 1994 comments before Congress, Complaint, 3, and Evans’s reliance on Lorillard’s magazine advertisements showing attractive African-American men and women smoking Newport cigarettes and the phrase “fresher than any other menthol cigarette.” Id. 18. “The question whether a party’s reliance on a promise by another is reasonable is often a question of fact, but in an appropriate case can present an issue of law. This is especially so when the parties involved are of relatively equal knowledge and sophistication.” Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383, 387 (1998); see Moran v. Gala, 66 Mass.App.Ct. 135, 141 (2006).
The Plaintiff explicitly alleged in his complaint that “Lorillard’s knowledge of the material facts about smoking, health and addiction was vastly superior to the knowledge of. . . Evans and other members of the general public who purchased, used and consumed Lorillard’s cigarettes. Public access to these facts known by Lorillard has been exclusively within its control.” Complaint, 43.[21] For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), this court takes this allegation as true. Fairneny, 422 Mass. at 470. Therefore, as it is not “beyond doubt that the (P)laintiff can prove ... [a] set of facts in support of his claim which would entitle him to reliefl,]” Lorillard’s motion to dismiss Count I for failure to state a claim of reasonable reliance is DENIED. Nader, 372 Mass. at 98, quoting Conley, 355 U.S. at 45-46.
B. Count II — Voluntary Undertaking of a Duty
In Count II, the Plaintiff claims that Lorillard voluntarily undertook the duty of researching tobacco use and human health and of accurately and fully disclosing the results of its research to the smokers of Lorillard-brand cigarettes, including Evans. By failing to exercise reasonable care in performing that duty, the Plaintiff further alleges, Evans suffered physical harm beyond that which she would have experienced if Lorillard had not voluntarily undertaken this duly. Lorillard seeks to dismiss this claim because the Plaintiff cannot establish the essential elements of the claim.
“If a person voluntarily assumes a duty or undertakes to render services to another that should have been seen necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking.” Davis v. Westwood Group, 420 Mass. 739, 746 (1995), quoting Thorson v. Mandell 402 Mass. 744, 748 (1988). The mere fact that Lorillard voluntarily undertook the service of researching tobacco use and human health “is not sufficient to impose a duty. It must also be shown that either (a) the failure to exercise due care increased the risk of harm, or (b) the harm is suffered because of [Evans’s] reliance on the undertaking.” Mullins v. Pine Manor Coll. 389 Mass. 47, 53-54 (1983); see Restatement (Second) of Torts §323 (1965).[22] Where the voluntary undertaking is gratuitous, however, the only duty owed is “the duty to refrain from gross negligence.” Kolofsky v. Heath, 370 Mass. 856, 856 (1976), citing Wheatley v. Peirce, 354 Mass. 573, 576 (1968).
Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care ... It is a heedless and palpable violation of legal duty respecting the rights of others . . . Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure.
Christopher v. Father’s Huddle Café, Inc., 57 Mass.App.Ct. 217, 230-31 (2003), quoting Altman v. Aronson, 231 Mass. 588, 591-92 (1919).
There is no need to determine whether the Plaintiff has stated a claim of gross negligence. The duties that Lorillard allegedly undertook were
to accept an interest in the public’s health as a basic and paramount responsibility; to cooperate closely with those who safeguard the public health; to aid and assist the research effort into all aspects of tobacco use and human health; to continue to research and otherwise undertake all possible efforts to learn all the facts and to discover the truth about smoking and health; and finally, to disclose to the American public . . . complete and accurate information about the effects of cigarette smoking on human health.
Complaint, 51. The Plaintiffs complaint further asserts that Lorillard undertook this duty “to render such services [to research and disclose] recognizing that they were necessary for the protection of smokers of Lorillard-brand cigarettes, including . . . Evans.” Complaint, 52. Taking the allegations set forth in the complaint as true, Fairneny, 422 Mass. at 470, the duty Lorillard voluntarily undertook was not gratuitous but for the protection of smokers of Newport cigarettes, including Evans. See Davis, 420 Mass. at 746.
The Plaintiff has set forth sufficient facts in his complaint to state a claim that Lorillard failed to disclose the results of its research and that, as a result of this failure to disclose, Evans did not understand that cigarettes were hazardous and addictive and that the menthol in Newport cigarettes made them more hazardous than non-mentholated cigarettes. There *101 fore, Lorillard’s motion to dismiss Count II is DE-NIEDi.[23]
C. Count III — Breach of Warranty
In Count III, the Plaintiff alleges that the Defendants breached their implied warranty of merchantability. Pursuant to G.L.c. 106, §2-314, “a warranty that the goods shall be merchantable is implied in a contract for the sale if the seller is a merchant with respect to goods of that kind.” G.L.c. 106, §2-314(1). For goods to be “merchantable” within the meaning of the statute, they must be “fit for the ordinary purposes for which such goods are used . . .” Id. §2-314(2) (c).
Massachusetts equates “a breach of the implied warranty of merchantability that goods be ‘fit for the ordinary purposes for which such goods are used,’ G.L.c. 106, §2-314(2)(c), with the sale of an ‘unreasonably dangerous’ product” as set forth in Restatement (Second) of Torts §402A(1).[24] Commonwealth v. Johnson Insulation, 425 Mass. 650, 660 (1997) (internal citations in original); see Haglund v. Philip Morris, Inc., 446 Mass. 741, 746 (2006) (“Warranty liability is . . . ‘congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts §402A (1965)”). “A product may be unreasonably dangerous because of a defect in design . . . Alternatively, a product may be considered to be unreasonably dangerous because of the absence of an adequate warning, sufficient to alert those who may be sensitive to the product and to allow users to balance the risk of harm against the product’s social utility.” Johnson Insulation, 425 Mass. at 661; see Haglund, 446 Mass. at 747 (“Warranty liability may be premised either on the failure to warn ... or ... on defective design”).
The Plaintiff alleges that the Defendants breached the implied warranty of merchantability both by a design defect and an inadequate warning. First, the Plaintiff asserts that Newport cigarettes were defective and unreasonably dangerous to consumers such as Evans as a result of the dangerous levels of tar, nicotine, and other substances they contained. Had the Defendants adopted a reasonable alternative design, the Plaintiff further alleges, they could have avoided or, at the least, reduced the foreseeable risks the Newport cigarettes posed. Second, the Plaintiff contends that the Defendants breached this warranty by failing to give consumers an adequate warning, prior to June 30, 1969, of the health hazards and addictive properties of Newport cigarettes. The Defendants argue that, given the fact that the risks of smoking have been well-known since the time Evans began smoking, there is no duty to warn.
1. Design Defect
The “essence” of a design defect theory “is that all products of a particular type are defective when they leave the manufacturer.” Smith v. Ariens Co., 375 Mass. 620, 626 (1978). Warranty liability as a result of a design defect therefore “focuses on the product’s features, not the seller’s conduct.” Haglund, 446 Mass. at 747. Thus, “(t]o show that a defect is attributable to a manufacturer in a design defect action, therefore, the plaintiff must show that the defect existed at the time the product left the manufacturer.” Smith, 375 Mass. at 626; see Back v. Wickes Corp., 375 Mass. 633, 642 (1978) (stating that factors to be considered in evaluating adequacy of product’s design include “the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design”). Liability results if the “conscious design choices fail to anticipate the reasonably foreseeable risks of ‘ordinary’ use.” Haglund, 446 Mass. at 747-48, quoting Back, 375 Mass. at 642. The Defendants argue that the Plaintiff cannot state a design defect claim because the Plaintiff cannot establish that the Newport cigarettes Evans smoked were unreasonably dangerous, that there was a unique defect in the Newport cigarettes Evans smoked, and that there is a technically feasible alternative design.
Under the heading “Sale of Defective and Unreasonably Dangerous Products” in the complaint, the Plaintiff expressly states that the Newport cigarettes that the Defendants sold or distributed contained “disease-causing ingredients and nicotine in addictive amounts . ..” Complaint, 35. Moreover, the Plaintiff alleges that “Newport cigarettes are an inherently, abnormally and unreasonably dangerous product . . . Defendants knew or should have known of the dangers inherent in the use of Newport cigarettes, and that. . . Evans would be harmed by the foreseeable and intended use of these cigarettes.” Id. 37. Newport cigarettes were unreasonably dangerous “because such cigarettes were carcinogenic, addictive, and contained dangerous levels of tar, nicotine and other substances.” Id. 60.
In Kyte v. Philip Morris Inc., the plaintiffs claim that defendant breached the implied warranty of merchantability was “not based on the proposition that all cigarettes are inherently defective, but rather on a claim that, because of their defective design, . . . [the defendant’s] cigarettes were inherently carcinogenic and addictive.” 408 Mass. 162, 171 (1990). The fact that the plaintiffs complaint failed to “spell out what the design defect was that made [the defendant’s] . . . cigarettes carcinogenic and addictive” was not fatal to the plaintiffs claim, and the court denied the defendant’s motion for summary judgment. Id.; see also Johnson I, 122 F.Sup.2d at 205 (“Although the overall ‘thrust’ of [plaintiffs] negligent design claim may be characterized as alleging that cigarettes as a whole are dangerous, it clearly pleads that [defendant’s] tobacco was ‘bad’ . . . [Thus, plaintiff] has . . . sufficiently pled design defects specific to *102 [defendant’s] cigarettes as opposed to cigarettes in general”).[25] Here, too, the Plaintiffs claim of breach of implied warranty of merchantability does not rely solely on the defects inherent in all cigarettes; rather, the Plaintiff claims that the dangerous levels of tar, nicotine, and other substances in Newport cigarettes constitute a design defect. This allegation is more detailed and “spell[ed] out” than the plaintiffs claim in Kyte on which the court declined to grant the defendant’s motion for summary judgment. See 408 Mass. at 171; see also Johnson I, 122 F.Sup.2d at 205 (relying on Kyte’s reasoning).
Additionally, “a plaintiff alleging negligent design must show the existence of a safer alternative design that can be implemented without undue cost.” Johnson I, 122 F.Sup.2d at 206, citing Colter v. Barber-Greene Co., 403 Mass. 50, 57 (1988). Although the plaintiff in Johnson I did not “specify any such alternative designs,” the plaintiff “implie[d] that there was a safer alternative design available to [the defendant]” by listing in his complaint the several design defects in the defendant’s cigarettes. Id. Similarly, the Plaintiff in this case has not specifically alleged safer alternative designs the Defendants could have implemented, but he implies that a safer alternative “presumably would have reduced tar and other carcinogens ...” Id.; see Fairneny, 422 Mass. at 470 (holding that, on motion to dismiss, court must accept as true complaint’s well-pleaded factual allegations and any reasonable inferences in plaintiffs favor that may be drawn therefrom). Accordingly, the Defendants’ motions to dismiss Count III are DEMEDinsofar as Count III alleges that Newport cigarettes are defectively designed because of the high levels of tar, nicotine, and other substances that render them carcinogenic and addictive.
The Plaintiffs complaint also alleges that Lorillard “added menthol to its Newport cigarettes to facilitate the initiation of smoking and the development of a smoking habit in children!,]” and that Evans was “unaware until after her heart attack in 1984, that the addition of menthol made Newport cigarettes more dangerous to her health than non-mentholated cigarettes.” Complaint, 20. The court in Johnson v. Brown & Williamson Tobacco Corp. (“Johnson IF) held that the plaintiffs argument that the defect was the presence of menthol failed “because the addition of menthol is the purpose and intention of menthol cigarettes, not a defect. [The defendant’s) cigarettes are advertised as containing menthol and consumers buy them with full knowledge of that fact.” 345 F.Sup.2d 16, 21 (D.Mass. 2004); see Restatement (Second) of Torts §402A, cmt. g.[26] The Defendants urge this court to adopt this holding and dismiss the Plaintiffs allegation.
This court declines to follow the First Circuit’s holding in Johnson II. 345 F.Sup.2d at 21. That court rendered its decision after discoveiy, and with the benefit of a full summary judgment record that included expert opinions. See id. But see Johnson I, 122 F.Sup.2d at 205 (denying defendant’s motion to dismiss plaintiffs design defect claim). Moreover, as discussed above, this court has declined to take judicial notice as to the hazardousness and addictiveness of cigarettes. Thus, at this point in the litigation, before there has been discoveiy and the retention of expert testimony, this court denies the Defendants’ motions to foreclose the Plaintiff from proceeding on this claim. The Defendants’ motions to dismiss Count III are therefore DENIED.
2. Failure to Warn
Section 2(c) of the Restatement (Third) of Torts: Products Liability §2(c) (1998)
reaffirms the principle expressed in Restatement (Second) of Torts, ... at §402A comment j, by stating that a product “is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings . . . and the omission of the instructions or warnings renders the product not unreasonably safe.”
Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 21 (1998) (second ellipses in original). The Plaintiff limits his failure to warn claim to the period prior to June 30, 1969, see 15 U.S.C. 1334(b), alleging that the Defendants “failed to give users and consumers of Newport cigarettes ... an adequate warning of the health hazards and addictive properties of Newport cigarettes, all of which were known or should have been known to Defendants.” Complaint, 61. The Plaintiff has stated a claim for relief in Count III as to this issue, therefore the Defendants’ motions to dismiss Count III insofar as it alleges a breach of warranty as a result of a failure to warn prior to June 30, 1969, are DENIED.
D. Count IV — Public Nuisance
In Count IV, the Plaintiff alleges that the Newport cigarette giveaways that Lorillard conducted around the area where Evans grew up constituted a significant interference with the public health and safety in violation of G.L.c. 270, §6, and were therefore a public nuisance. Lorillard seeks to dismiss this claim arguing that the Plaintiff has no private right of action under G.L.c. 270, §6, and that the Plaintiff has not established that Lorillard interfered with a legally recognizable public right.
“A nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing common injury.” Town of Hull v. Massachusetts Port Auth., 441 Mass. 508, 517 (2004), quoting Connerty v. Metropolitan Dist. Comm’n, 398 Mass. 140, 148 (1986), abrogated on other grounds by Jean W. v. Commonwealth, 414 Mass. 496 (1993). “To maintain a public nuisance action, a plaintiff must show that the public nuisance *103 has caused some special injuiy of a direct and substantial character other than that which the general public shares.” Connerty, 398 Mass. at 148 (emphasis added), citing Stop & Shop Cos. v. Fisher, 387 Mass. 889, 894, 899 (1983). If the plaintiff does allege particularized harm, the plaintiff himself can “recover for injuries caused by a public nuisance ...” Id. “Without such a particularized injuiy, however, the remedy for public nuisance must be sought by public authorities.” Id.
The Plaintiff has demonstrated that Lorillard’s conduct interfered with a public right, specifically G.L.c. 270, §6,[27] which prohibits the distribution of cigarettes to any person under the age of eighteen. In Planned Parenthood League of Mass. v. Bell, the court held that the plaintiff “sufficiently state[d] a case in public nuisance” because it alleged that the defendant had interfered with the rights of its patients to obtain an abortion, a right “recognized as a substantive right under both the Federal and State Constitutions.” 424 Mass. 573, 578 (1997), quoting Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 707 (1990). At this point in the litigation, the Plaintiff has therefore satisfied this burden.
The Plaintiff has also sufficiently alleged particularized harm. In Connerty, the court found that the plaintiff “alleged facts sufficient to indicate he . . . suffered harm more particularized than the harm suffered by the community at large.” Id. Specifically, as a licensed clam digger, he “suffered harm to his livelihood . . . [as] he was deprived of income by the [defendant’s] pollution of the waters ...” Id. at 148-49. In contrast, “the ordinary citizen was merely deprived of a cleaner harbor for a period of time.” Id. at 149. Here, the Plaintiff has also alleged facts sufficient to state a claim that Evans suffered particularized harm. While the harm to the public was the distribution of Newport cigarettes to minors, Evans developed injuries to her health and eventually died of cancer. Thus, the Plaintiff has satisfied this burden as well.
Consequently, Lorillard’s motion to dismiss Count IV is DENIED.
E. Count V — Battery
In Count V, the Plaintiff claims that Lorillard’s conduct constitutes a battery. Lorillard seeks to dismiss this count, arguing that Massachusetts law does not permit a battery claim based on lack of consent, and that the Count v. lacks the specificity required for a claim based upon an allegation of concealment. “An actor is subject to another for battery if [a] he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results . . .” Waters v. Blackshear, 412 Mass. 589, 590 (1992) (alterations in original), quoting Restatement (Second) of Torts §13 (1965). Thus, to state a claim for civil battery, the Plaintiff must allege that Lorillard’s intentional act resulted in either direct or indirect contact with Evans that was either harmful or offensive.
Contact is harmful “regardless of consent. But an offensive . . . [contact] is so only because of lack of consent.” Commonwealth v. Cohen, 55 Mass.App.Ct. 358, 359 (2002), quoting Commonwealth v. Burke, 390 Mass. 480, 483 (1983) (“[I]t is the nonconsensual imposition upon one’s person that makes a touching offensive and it is the offensiveness that makes the touching a battery”); see also Commonwealth v. Parker, 25 Mass.App.Ct. 727, 731 n.8 (1988) (“Physically harmful touching is a battery, and consent is immaterial. However, a nonharmful touching is a battery only if there is no consent”). The contact at issue in this case is Evans’s smoking Newport cigarettes. Given her health problems arising from her addiction to Newport cigarettes, the contact was physically harmful. Evans’s consent is therefore irrelevant.
Harmful or offensive contact is “intended if the act is done for the purpose of accomplishing the result or with knowledge that to a substantial certainly such a result will ensue . . .” Waters, 412 Mass. at 590, quoting Harper F. James, Jr., & O.S. Gray, Torts §3.3, at 272-73 (2d ed. 1986). The Plaintiff has alleged that Lorillard added menthol to cigarettes in order to develop smoking habits in children. Complaint, 20. Lorillard therefore knew that adding menthol to cigarettes made the cigarettes more addictive.
The “contact” that results from the act “may be direct, as by striking another, or it may be indirect, as by setting in motion some force or instrumentaliiy with the intent to cause injury.” Cohen, 55 Mass.App.Ct. at 359, quoting Commonwealth v. Dixon, 34 Mass.App.Ct. 653, 654 (1993). Lorillard’s act that resulted in Evans’s sustaining physical harm was its addition of menthol to Newport cigarettes. By adding menthol to Newport cigarettes, Lorillard set in motion an instrumentalityNewport cigarettes, containing an ingredient that allegedly rendered them more addictive than non-mentholated cigaretteswith the intent to cause injuiy.
The Superior Court case, Burke v. Chatbar, Inc., Civil No. 03-00423, 2004 WL 3218001 (Barnstable Super.Ct. Nov. 18, 2004) (Connon, J.), is instructive as to this claim. In Burke, the plaintiff sued the defendant employer and two co-workers for, in part, battery as a result of one of the defendant co-worker’s actions. Id. at *1. Specifically, the plaintiff alleged that the defendant committed a battery by intentionally serving the plaintiff a sandwich containing a fried dish towel. Id. As a result of ingesting this “sandwich,” the plaintiff went to the hospital where he was treated for nausea. Id. The court found that these facts were sufficient to deny the defendant’s motion for summary judgment on that claim. Id. at *6. Burke serves as persuasive authority for the argument that a plaintiff has alleged a battery where the plaintiff has ingested something the defendant has *104 given her when the defendant knows the item is physically harmful and the plaintiff does not know that the item is physically harmful.
The Plaintiff has accordingly stated a cause of action of civil battery, and Lorillard’s motion to dismiss Count v. is DENIED.
F. Count VI — Violations of G.L.c. 93A, §9
In Count VI, the Plaintiff alleges that the Defendants violated G.L.c. 93A, §9, by Lorillard’s misrepresentations of material facts with respect to the addictive and hazardous nature of Newport cigarettes, by Lorillard’s failure to disclose facts to Evans which might have influenced her not to purchase Newport cigarettes, and by the Defendants’ breach of the implied warranty of merchantability through their manufacture, distribution, and sale of Newport cigarettes in a defective condition that was unreasonably dangerous to consumers, including Evans. The Defendants first argue that this claim must be dismissed for the same reasons it argued that Counts I and III must be dismissed. While this court agrees that Count VI is based on conduct alleged in Counts I and III, this court found that both of those counts are viable. Therefore, the Defendants’ motions to dismiss Count VI on those grounds are DENIED.
The Defendants also argue that Count VI must be dismissed to the extent it alleges conduct that occurred prior to the effective date of G.L.c. 93A. “The effective date of G.L.c. 93A, §2, inserted by St. 1967, c. 813, §1 (approved December 26, 1967), is March 26, 1968; and the effective date of G.L.c. 93A, §9, inserted by St. 1969, c. 960 (approved August 13, 1969), is November 13, 1969.” Lewis v. Ariens Co., 434 Mass. 643, 645 n.3 (2001). Therefore, the Defendants argue, any conduct that the Plaintiff alleges occurred prior to November 13, 1969, is not actionable under G.L.c. 93A.
“(A]ll statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations!.]” Goodwin Bros. Leasing, Inc. v. Nousis, 373 Mass. 169, 173 (1977) (first alteration in original) quoting Hanscom v. Malden & Melrose Gas Light Co., 220 Mass. 1, 3 (1914). Thus, “[w]here it appears that the Legislature intended an act to be retroactive, this intent should be given effect in so far as the Massachusetts and Federal Constitutions permit.” Pielech v. Massassoit Greyhound, Inc., 441 Mass. 188, 192 (2004), quoting St. Germaine v. Pendergast, 416 Mass. 698, 702 (1993). “Where, however, the statute regulates practice, procedure or evidence, as distinguished from substantive rights, it will commonly be applied to actions already pending.” Id., citing American Locomotive Co. v. Hamblen, 217 Mass. 513, 515 (1914). It is undisputed that G.L.c. 93A concerns substantive rather than procedural rights and that the Legislature did not intend G.L.c. 93A to be retroactive.
As “the legislative intent is unequivocally clear [G.L.c. 93A] . . . operates prospectively, not retroactively.” Sentry Fed. Sav. Bank v. Co-Operative Central Bank, 406 Mass. 412, 414 (1990). Accordingly, the Defendants’ motions to dismiss Count VI are ALLOWED to the extent that Count VI concerns conduct that occurred prior to November 13, 1969.[28]
G. Count VII — Negligence
In Count VII, the Plaintiff alleges that the Defendants owed Evans a duty to exercise reasonable care but that they breached that duly by failing to warn and to make complete and accurate representations to the public, including Evans, of the addictive and hazardous nature of Newport cigarettes, and by failing to exercise reasonable care in their manufacture, marketing, distribution, and sale of Newport cigarettes; in Lorillard’s distributing Newport cigarettes to children, including Evans, at giveaways; and in Lorillard’s marketing Newport cigarettes to children, including Evans. The Defendants argue that, insofar as Count VII is a claim for negligent design defect and negligent failure to warn, it should be dismissed for the same reasons as Count III; insofar as Count VII is a claim for negligent misrepresentation, the Plaintiff cannot establish Evans’s reasonable reliance; insofar as Count VII is a claim for negligent entrustment, the Plaintiff cannot establish that Evans was ignorant of the dangers of smoking, and the Plaintiff has no private right of action under G.L.c. 270, §6; and, insofar as Count VII is a claim for negligent marketing, it fails for the same reasons as Count v. and negligent entrustment as it is duplicative of those claims.
1. Negligent Failure to Warn and Negligent Design Defect
“(NJegligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard: the reasonableness of the defendant’s actions in the circumstances.” Hoffman v. Houghton Chem. Corp., 434 Mass. 624, 637 (2001). Moreover, “[it] is possible ... to bring a defective design claim predicated on a theory of negligence.” Haglund, 446 Mass. at 747 n.9, citing Uloth v. City Tank Corp., 376 Mass. 874 (1978). Furthermore, “[a] defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true.” Id., quoting Colter, 403 Mass. at 61. Thus, “[a] defendant cannot be found to have been negligent without having breached the warranty of merchantability.” Id., quoting Colter, 403 Mass. at 61.
Above, in its conclusion concerning Count III, the Plaintiffs breach of warranty claim, this court held that the Plaintiff can proceed on his design defect claim and on his failure to warn claim. Accordingly, insofar as Count VII duplicates the allegations in Count III, the Defendants’ motions to dismiss Count VII are DENIED.
*105 2.Negligent Misrepresentation
“A claim for negligent misrepresentation is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion.” Nota Constr. Corp. v. Keyes Assoc., Inc., 45 Mass.App.Ct. 15, 20 (1998); see Restatement (Second) of Torts §552(1), cmt. e (1977). “Negligent misrepresentation differs from an action for fraud because ‘liability for misrepresentation does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff.’ ” Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 n.25 (2004), quoting Kitner v. CTW Transp., Inc., 53 Mass.App.Ct. 741, 749 (2002); see Nota Constr. Co., 45 Mass.App.Ct. at 20 (listing reasonable reliance among elements of negligent misrepresentation). The Plaintiff has limited this claim of negligent misrepresentation to Lorillard only, see Complaint, 84(c), therefore the Defendants’ motions to dismiss Count VII are ALLOWED insofar as it alleges that defendants Garber, Melhado, and Franklin made negligent misrepresentations.
In Count VII, the Plaintiff has alleged that “Lorillard failed to exercise reasonable care in making representations and providing complete and accurate information to the public, including . . . Evans, about smoking, health and addiction . . .” Id. As discussed above, the Plaintiff has also alternatively alleged that Lorillard knew that its representations to the public, including Evans, regarding the harmfulness and addictiveness of cigarettes were false and that it intended to deceive its customers. See Mass.R.Civ.P. 8(e)(2) (permitting party to “set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses”).[29] In the absence of any indication to the contrary, this court presumes that the Plaintiffs claim of negligent misrepresentation refers to the same alleged statements on which the Plaintiffs Count I relies. See Complaint, 82 (“Plaintiff restates and incorporates herein [Count VII] the foregoing paragraphs 1-80 of his Complaint"). Consequently, for the same reasons set forth above with respect to the Plaintiffs Count I allegations, Lorillard’s motion to dismiss Count VII is ALLOWED in part and DENIED in part.
3.Negligent Entrustment
“[I]n particular circumstances, a supplier may be liable for harm caused after the supplier has knowingly placed property in the hands of an incompetent person.” Kyte, 408 Mass. at 169. A manufacturer, however, cannot be held “liable in negligence simply because some third party unlawfully placed that product in the hands of a minor and, as a result, the minor or some other person was harmed.” Id. In his opposition to the Defendants’ motions to dismiss, the Plaintiff explains that the challenged action that gives rise to this claim of negligent entrustment is Lorillard’s giveaways of Newport cigarettes to minors, including Evans; the Plaintiffs complaint does not allege that the other Defendants had any involvement in these giveaways. Therefore, insofar as Count VII alleges negligent entrustment against defendants Garber, Melhado, and Franklin, those defendants’ motions to dismiss Count VII are ALLOWED.
The Plaintiff alleges, therefore, that it is Lorillard itself that “knowingly placed property in the hands of an incompetent person.” Id. The court in Kyte likens the placing of cigarettes in the hands of a minor to the sale of alcoholic beverages to a minor. Id,, citing Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. 6, 10-11 (1983). In Michnik-Zilberman, the plaintiff alleged that the defendant liquor store sold liquor to a seventeen-year-old customer who, while driving after imbibing the liquor, struck and killed the plaintiffs husband. 390 Mass. at 7-8. “It is the rule of this Commonwealth that negligence on the part of a seller or supplier of alcoholic beverages may be shown by a sale or the furnishing of those beverages to a minor, as well as to an inebriated person, as each is proscribed by statute.” Id. at 10, citing G.L.c. 138, §§34, 69. It is the sale of the alcoholic beverages to a minor that is the “evidence of negligence even if the minor is not intoxicated at the time of the transaction. It is the sale or furnishing alcohol itself which is critical.” Id, (footnote omitted).
As noted above, “[w]hoever sells a cigarette, chewing tobacco, snuff or any tobacco in any of its forms to any person under the age of eighteen or, not being his parent of guardian, gives a cigarette, chewing tobacco, snuff or tobacco in any of its forms to any person under the age of eighteen” is in violation of G.L.c. 270, §6, and subject to afine. G.L.c. 270, §6 (emphasis added). Afree giveaway of cigarettes to persons under the age of eighteen therefore violates G.L.c. 270, §6. See id. The court in Kyte held that the plaintiffs failed “to produce record support. . . as to whether . . . [defendant cigarette manufacturer] supplied cigarettes to minors through Store 24. [The defendant] produced record support for the proposition that it did not.” Kyte, 408 Mass. at 170. For that reason, the court held that, as a matter of law, the plaintiffs could not prove their claim of negligent entrustment. Id. Hie court was therefore willing to recognize a cause of action of negligent entrustment based on the sale of cigarettes to minors.
Here, conversely, the Plaintiff has set forth facts in his complaint alleging that Lorillard gave Newport cigarettes to minors. Thus, insofar as Count VII alleges that Lorillard’s free giveaways of Newport cigarettes constitutes negligent entrustment, the Defendants’ motions to dismiss are DENIED.
4.Negligent Marketing
As with negligent entrustment, the Plaintiff limits this claim to Lorillard alone, specifically to Lorillard’s marketing Newport cigarettes to target minors at the giveaways. The Plaintiff does not allege that defendants Garber, Melhado, and Franklin engaged in marketing, negligent or otherwise. Therefore, insofar as the Plaintiff claims Garber, Melhado, and Franklin are *106 liable for negligent marketing, those three defendants’ motions to dismiss Count VII are ALLOWED.
In Kyte, as the plaintiffs did not argue that the defendant cigarette manufacturer was liable under a theory of negligent marketing, the court did “not consider how far, if at all, marketing that intentionally or negligently induced an incompetent to use a product could be the basis of a manufacturer’s liability.” Id. The court cited to Killeen v. Harmon Grain Prods., Inc., 11 Mass.App.Ct. 20, 28 (1980), for the proposition “that a manufacturer’s liability [for negligent marketing) might be based on the marketing of a product in a manner calculated to induce direct purchases by children whose use would involve an unreasonable risk of injury.” Kyte, 408 Mass. at 170 & n.8.
In Killeen, the court noted that, “(p]resumably, the [defendant] manufacturer [did] not know of a sale to any particular customer!,] . . . [and] [t]here was no evidence that [the products] . . . were advertised, to children or otherwise.” 11 Mass.App.Ct. at 28. Conversely, here, the Plaintiff has alleged that Lorillard marketed Newport cigarettes “in a manner calculated to induce direct purchases by children” by failing “to exercise reasonable care in marketing Newport cigarettes, including at Newport giveaways, by intentionally and/or negligently inducing minors, including . .. Evans, to smoke samples of Newport cigarettes.” Complaint, 84(e). Moreover,
[a] . . . basis for a finding of negligence against a manufacturer would involve the manufacturer’s marketing its product, through advertising, packaging, or distribution, in a manner calculated to induce direct purchases by children or others whose use of the product would involve an unreasonable risk of injury. Without such a basis a finding of liability would imply that the manufacturer is subject to a legal duty to guard, by warnings or otherwise, against his products’ falling into the hands of children, a duty which might reasonably be required with respect to a product that is particularly attractive to children and inherently hazardous . . . but which ... is not required with respect to such everyday objects as pins, needles, scissors, knives, toothpicks, or objects made of glass.
Killeen, 11 Mass.App.Ct. at 28 (emphasis added).
Consequently, the Plaintiff has set forth a claim for negligent marketing of Newport cigarettes, and the Defendants’ motions to dismiss Count VII on this basis are DENIED.
H. Count VIII — Wrongful Death
Finally, in Count VIII, the Plaintiff contends that the Defendants’ wrongful conduct caused Evans’s death. The wrongful conduct the Plaintiff alleges includes the manufacture, distribution, and selling of Newport cigarettes with carcinogenic and other harmful substances and with an addictive amount of nicotine when reasonable alternative designs were feasible; the manufacture, distribution, and selling of a product in an unreasonably dangerous condition; the failure to warn Evans, prior to 1969, of the hazardous and addictive nature of smoking Newport cigarettes; Lorillard’s distribution of Newport cigarettes through giveaways at which children, including Evans, received free samples; and Lorillard’s intentional, willful, and/or reckless failure to disclose to Evans that Newport cigarettes were carcinogenic, addictive, and hazardous to human health and contained harmful substances. The Defendants allege that Count VIII is dependant on the viability of the Plaintiffs other claims, therefore this claim must be dismissed as well.
“General Laws c. 229, §2, governs actions for recovery of damages arising from wrongful death.” Marco v. Green, 415 Mass. 732, 735 (1993). Section 2 “establishes procedures for the recovery of damages the substantive right to which is anchored in the common law.” Id., citing Gaudette v. Webb, 362 Mass. 60, 71 (1972); see Hallett v. Town of Wrentham, 398 Mass. 550, 555 (1986) (“The wrongful death statute provides for a single action brought by the decedent’s executor or administrator. The executor or administrator presents all claims by the designated beneficiaries for damages flowing from the wrongful death”). A party is liable under G.L.c. 229, §2, if he “by his negligence causes the death of a person, or ... by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, or ... is responsible for a breach of warranty arising under Article 2 of chapter one hundred and six .which results in injuiy to a person that causes death . . .” G.L.c. 229, §2.
As noted, the Plaintiff alleges that the Defendants are liable for the wrongful death of Evans based on their negligence and their breach of warranty. These allegations concern the same issues set forth in the Plaintiffs claims of negligence (Count VII) and breach of the implied warranty of merchantability (Count III). Insofar as Count VIII arises out of the same conduct complained of in Counts III and VII, the Defendants’ motions to dismiss Count VIII are DENIED.
The Plaintiff also alleges that the Defendants are liable for the wrongful death of Evans based on their willful, wanton, and/or reckless conduct. “ ‘Wilful, wanton, or reckless’ conduct is ‘intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.’ ” Manning v. Nobile, 411 Mass. 382, 387 (1991) (footnote omitted) (emphasis added), quoting Commonwealth v. Catalina, 407 Mass. 779, 789 (1990). The Plaintiff has alleged that, “[a]t all relevant times, [Defendants knew or should have known that smoking Newport cigarettes is hazardous to human health, causes human diseases and his addictive . . . Defendants knew or should have known of the dangers *107 inherent in the use of Newport cigarettes, and that. .. Evans would be harmed by the foreseeable and intended use of these cigarettes.” Complaint, 36-37. Further, the Plaintiff has alleged that the Defendants willfully and knowingly violated G.L.c. 93A through their conduct. Accordingly, insofar as Count VIII alleges that the Defendants are liable for the wrongful death of Evans in violation of G.L.c. 229, §2, as aresult of their willful, wanton, and/or reckless conduct, the Defendants’ motions to dismiss are DENIED.
ORDER
For the foregoing reasons, the Defendants’ motions to dismiss the Plaintiffs complaint are DENIED in full as to Counts II, III, IV, V, and VIII; the Defendants’ motions to dismiss the Plaintiffs complaint are ALLOWED in part and DENIED in part as to Counts I, VI, and VII.

Lorillard filed an extensive motion to dismiss; Franklin filed a separate motion to dismiss and also joined in the other Defendants’ motions to dismiss; and Garber and Melhado filed a joint motion to dismiss indicating that they joined in Franklin’s and Lorillard’s motions to dismiss.

Lorillard made this promise through its trade association, the Tobacco Industry Research Committee.

The only statement relating to smoking and health that is “required on any cigarette package” is “the statement required by section 1333 of this title . . .” 15 U.S.C. §1334(a). Section 1333 of title 15 of the United States Code requires that cigarette packages bear one of the following labels:
SURGEON GENERAL’S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
SURGEON GENERAL’S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
SURGEON GENERAL’S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
SURGEON GENERAL’S WARNING: Cigarette Smoke Contains Carbon Monoxide.
Id. §1333(a)(l), (2), (3).

Although no Massachusetts state court has analyzed Cipollone in the context of an action against tobacco manufacturers, the Supreme Judicial Court analogized to the Cipollone Court’s examination of the FCLAA in its own discussion of the preemptive effect of the Federal Insecticide, Fungicide, and Rodenticide Act in Hochberg v. Zoecon Corp., 421 Mass. 456, 459-61 (1995).

Lorillard makes this argument specifically as to Counts I, II, V, VI, and VII; Franklin, which also joins in the other Defendants’ motions to dismiss, makes this argument as to Count III specifically.

For purposes of the following analysis only, this court assumes that the Plaintiffs allegations are otherwise valid and state a claim for relief.

The plaintiffs separate failure to warn claim, to which the Court likened this fraudulent misrepresentation theory, alleged that the defendants “failed to provide ‘adequate warnings of the health consequences of cigarette smoking.’ ” Id. at 524. The Court held that the FCLAA did preempt the failure to warn claim to the extent that it “require [d] a showing that [defendants’] post-1969 advertising or promotions should have included additional, or more clearly stated, warnings . . .” Id.

Even if the alleged misrepresentations do not constitute advertising and promotion, the FCLAA does not preempt them. See Cipollone, 505 U.S. at 528-29.

In Count III, the Plaintiff also alleges that the Defendants breached this warranty prior to 1969 by failing to warn of the health hazards and addictive nature of Newport cigarettes. Given that the effective date of the FCLAA was June 30, 1969, there is no need to conduct a preemption analysis of these claims that occurred before that date.

To the extent that Count v. concerns conduct that does not concern advertising or promotion, there is no preemption as 15 U.S.C. §1334(b) is not triggered.

In Count VII, the Plaintiff also alleges that the Defendants breached their duty in their failure to warn and to make complete and accurate representations to the public, including Evans, of the addictive and hazardous nature of Newport cigarettes. The Plaintiff, however, expressly contends that this failure to warn occurred prior to 1969, thereby precluding the FCLAA from preempting this claim.

Just as with Its FCLAA analysis, above, for purposes of this analysis only, this court presumes that the Plaintiffs claims are valid and state a claim upon which relief can be granted.

The Plaintiffs complaint is premised on the notion that Lorillard’s addition of menthol in its Newport cigarettes rendered those cigarettes more hazardous to Evans’ health and more addictive than non-mentholated cigarettes. See Complaint, 20. In particular, the Plaintiff also alleges that Lorillard marketed Newport cigarettes as “fresher than any other menthol cigarette!,]” Complaint, 18, that Lorillard “added menthol to its Newport cigarettes to facilitate the initiation of smoking and the development of a smoking habit in children!, ]... [and that] the addition of menthol made Newport cigarettes more dangerous to her health than non-mentholated cigarettes.” Id. 20. Therefore, although the Defendants have not made this argument, an additional inquiry is whether this court should take judicial notice of the hazards and addictiveness of smoking mentholated cigarettes in particular, and not simply smoking cigarettes in general as the Defendants have asserted.
In JohnsonI, in which the court considered the defendant’s motion to dismiss, the plaintiff alleged that the decedent died as a direct result of smoking Kool brand cigarettes. 122 F.Sup.2d at 198. In a separate decision, the court later considered the defendant’s summary judgment motion and noted that, in support of his “argument that Kool cigarettes have been defectively designed, [the plaintiff] offer[ed] the deposition testimony and affidavit of a [doctor] . . . [who] allege[d] that the menthol in Kool brand cigarettes (and presumptively all menthol cigarettes) acts as an anesthetic and cough suppressant causing smoke to be held longer in the lungs. That results, he explain[ed], in the smoker receiving more nicotine.” Johnson v. Brown & Williamson Tobacco Corp., 345 F.Sup.2d 16, 19 (D.Mass. 2004) Johnson II").
This court is not prepared to take judicial notice of the fact that mentholated cigarettes are more hazardous and addictive than non-mentholated cigarettes at this point in the litigation. There is no allegation that this fact is common knowledge, especially given the court’s holding in Johnson II, 345 F.Sup.2d at 19, that suggests that this fact cannot be known without the aid of expert testimony. See Hartman, 404 Mass. at 313 n.9 (precluding judicial notice where facts cannot be known without expert testimony or other proof). Accordingly, at this point in the litigation, this court will not take judicial notice of the fact that mentholated cigarettes are more hazardous and addictive than non-mentholated cigarettes.

Affirmed in part and reversed, on other grounds, in part by 216 F.3d 596 (7th Cir. 2000).

Additionally, the Supreme Judicial Court recently reiterated that it has “previously taken judicial notice of a report by the Surgeon General of the United States released in May 2004, that ‘presents persuasive evidence that smoking [cigarettes] harms nearly every organ of the human body, causes many diseases and reduces the health of smokers in general.’ ” Haglund v. Philip Morris, Inc., 446 Mass. 741, 750 (2006) (alteration in original), quoting Aspinall v. Philip Morris Co., 442 Mass. 381, 388 n. 16 (2004); see American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol, 446 Mass. 310, 317-18 (2006) (relying on judicial notice taken in Aspinall for conclusions regarding “substantial health dangers caused by tobacco smoke to smokers and nonsmokers alike"). Evans died in 2002, thus this court’s taking judicial notice of the 2004 Surgeon General report would be of no effect.

To the extent that this sentence refers to Tisch’s 1994 comment before Congress, it survives Lorillard’s motion to dismiss because, as discussed further below, the Plaintiffs allegation of fraud and misrepresentation based on Tisch’s statement satisfies Mass.R.Civ.P. 9(b).

For purposes of this Rule 9(b) discussion only, this court will assume that these facts constitute reasonable reliance. This element is discussed further, below, in the context of Lorillard’s challenge of that element.

According to the Plaintiffs complaint, Evans died on June 20, 2002, at the age of fifly-four. Therefore, Evans was likely bom in 1948 and was a teenager, age thirteen through age nineteen, from 1961 to 1967.

The Plaintiff contends that at the time Tisch allegedly made his statement before Congress, he was Lorillard’s President and Chief Financial Officer. The court infers from this allegation that Tisch made this statement within the scope of his employment. See Fairneny, 422 Mass. at 470 (accepting as tme all reasonable inferences arising from plaintiffs complaint).

Proposed Final Draft 1 of Restatement (Third) of Torts; Liability for Physical Harm §42 (2005) provides
An actor who undertakes to render services to another that the actor knows or should know reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
(a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
(b) the person to whom the services are rendered or another relies on the actor’s exercising reasonable care in the undertaking.
Massachusetts has not expressly adopted this provision.

In a footnote, Lorillard argues that, because the Plaintiff bases Count II on statements “made in the course of the public dialogue on smoking and health, it fails for the independent reason that it is barred by the First Amendment.” Lorillard Motion to Dismiss, at 35 n.10. This public dialogue “centered on ‘evaluations and judgments’ of scientific evidence.” Id., citing United States Department of Health, Education, and Welfare, United States Surgeon General’s Advisory Committee, Smoking and Health, Forward (1964). At this stage of the litigation, this argument fails. Even if Lorillard’s having undertaken this duly in the context of this “public dialogue” triggers First Amendment protection, this court is not prepared to take judicial notice of the fact that this “public dialogue” existed.

Restatement (Second) of Torts §402A(1) provides,
One who sells any product in a defective condition unreasonably dangerous to the user of consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

These holdings requiring that the plaintiff make more than a general allegation that all cigarettes are inherently defective are consistent with Restatement (Second) of Torts §402A, cmt. i, which provides, “Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.”

Comment g states that a product is defective where it is “in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.” Restatement (Second) of Torts §402A, cmt. g.

Section 6 of G.L.c. 270 provides,
Whoever sells a cigarette, chewing tobacco, snuff or any tobacco in any of its forms to any person under the age of eighteen or, not being his parent or guardian, gives a cigarette, chewing tobacco, snuff or tobacco in any of its forms to any person under the age of eighteen shall be punished by a fine of not less than one hundred dollars for the first offense, not less than two hundred dollars for a second offense and not less than three hundred dollars for any third or subsequent offense.
Contrary to Lorillard’s argument, Count IV does not assert a private right of action under G.L.c. 270, §6. The Plaintiff included that statute in his complaint in order to specify the public right with which Lorillard’s conduct interfered.

The Plaintiff relies on Commonwealth v. DeCotis, 366 Mass. 234 (1974), for the argument that the determination as to whether G.L.c. 93A should be applied prospectively “must be made on a case-by-case basis and that retroactive application of Chapter 93A is appropriate when the conduct of which the plaintiff complains was already unlawful prior to the statute’s enactment.” Plaintiffs Consolidated Opposition to Defendants’ Motions to Dismiss the Complaint, at 50 n.21. This court disagrees with the Plaintiffs reading of DeCotis.
In DeCotis, the court held that the defendants were not required to make payments to those individuals whose injuries occurred prior to the effective date of G.L.c. 93A, and that the defendants were entitled to a modification of the final decree to that effect. DeCotis, 366 Mass. at 244 n.8. The defendants, however, were only entitled to a modification as to those individuals who were injured prior to the effective date of G.L.c. 93A and who “did not have a right {apart from G.L.c. 93A) to” payment by the defendants. Id. (emphasis added). The individuals who were not entitled to payment from the defendants were therefore those whose injuries occurred prior to the effective date of G.L.c. 93A and whose only right to payment arose from G.L.c. 93A. Id. In order to ascertain which individuals were not entitled to payments, “a determination as to each such [individuars] rights [would] be required before the motion to modify [could] be acted on.” Id.

This court acknowledges that it is logical that a claim for negligent misrepresentation must be dismissed where the defendant’s misrepresentation was not negligent but was rather knowing and intentionally made to induce reliance. In Count VII, however, the Plaintiff has alleged that “Lorillard failed to exercise reasonable caret,]” Complaint, 84(c), and Mass.R.Civ.P. 8(e)(2) permits the Plaintiff to make alternative claims.